TIG INSURANCE COMPANY,
Plaintiff,

v.

TOWN OF CHEEKTOWAGA,
Defendant,

Town of Cheektowaga, Defendant/Third
Party Plaintiff,

v.

Aetna Casualty and Surety Co., CIGNA
Property & Casualty Ins. Co., Maryland Casualty Co., the Travelers Insurance Company and United States
Fidelity & Guaranty Co., Third Party
Defendants.

No. 97–CV–0546A.

United States District Court,
W.D. New York.

Sept. 29, 2000.

Order denying motion to amend,
May 1, 2001.

Morrison, Mahoney & Miller, Boston, MA (Michael F. Aylward, of Counsel), Hurwitz & Fine, P.C., Buffalo, NY (Dan D. Kohane, of Counsel), for Plaintiff.

Damon & Morey, Buffalo, NY (Joseph J. Schoellkopf, Jr., Carol G. Snider, and Michael J. Willett, of Counsel), for Defendant Town of Cheektowaga.

Connors & Vilardo, Buffalo, NY (Kevin A Ricotta, of Counsel), Buffalo, Morrison & Foerster, New York City (Charles L. Kerr, of Counsel), New York City, for Third Party Defendants Aetna Casualty & Surety Company and The Travelers Insurance Company.

Roach, Brown, McCarthy, Gruber & Chiari, P.C., Buffalo, NY (Edmund S. Brown, Jr., of Counsel), Siegel & Napierkowski, Cherry Hill, NJ (Alice A. Previte, of Counsel) for Third Party Defendant CIGNA Property & Casualty Ins. Co.

Willey, Rein & Fielding, Washington, DC (Lon A. Berk, and Mary E. Borha, of Counsel), Jasen, Jasen & Sampson, Buffalo, NY (William E. Nowakowski, of Counsel), for Third Party Defendant Maryland Casualty Co.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY (Michael P. Murphy, of Counsel), for Third Party Defendant United States Fidelity and Guaranty Company.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on August 22, 1997. On March 11, 1998, third-party defendant Century Indemnity Company ("Century"), improperly designated as CIGNA Insurance, filed a motion for summary judgment. On July 16, 1999, third-party defendants Maryland Casualty Company ("Maryland") and The Travelers Insurance Company ("Travelers") filed motions for summary judgment, plaintiff TIG Insurance Company ("TIG") filed a motion for summary judgment against defendant Town of Cheektowaga, and third-party defendant United States Fidelity & Guaranty Company ("USF & G") filed a motion for summary judgment. On September 15, 1999, defendant Town of Cheektowaga filed a cross-motion for partial summary judgment. On March 10, 2000, Magistrate Judge Foschio filed a Report and Recommendation, recommending that third-party defendant Century's motion be granted, that third-party defendant Maryland's motion be granted, that third-party defendant Travelers' motion be granted, that plaintiff TIG's motion be denied, that third-party defendant USF & G's motion be granted, and that defendant Town of Cheektowaga's cross-motion be denied.

Objections to the Magistrate Judge's Report and Recommendation were filed by defendant/third-party plaintiff Town of Cheektowaga and plaintiff TIG. Oral argument on the objections was held on May 12, 2000. At that time, the Court asked for additional briefing on the issue of the applicability of New York Insurance Law § 3420(d). Such briefing was completed

on June 9, 2000. On June 12, 2000, plaintiff TIG filed a motion to file supplemental papers.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation with one exception discussed below.

Defendant/third-party plaintiff Town of Cheektowaga ("Town") claims that certain of the third-party defendants in this case should be precluded from disclaiming coverage under the pollution exclusion clauses in their respective insurance policies because they failed to provide timely notice of such disclaimers pursuant to New York Insurance Law § 3420(d), which provides:

> If under a liability policy delivered or issued for delivery in [New York], an insurer shall disclaim liability or deny coverage for death of bodily injury arising out of a motor vehicle accident or any other type of accident occurring within [New York], it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.[1]

The Magistrate Judge, however, concluded that timely notice requirement in § 3420(d) does not apply to the pollution exclusion clauses at issue here. He reasoned that because the pollution exclusion clause expressly excluded the claimed incident from policy coverage, there was no contractual relationship with respect to

that incident and that a failure to timely disclaim would not create coverage where none otherwise existed. *See* Report and Recommendation at 27 (citing *Zappone v. Home Ins. Co.,* 55 N.Y.2d 131, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982)).

■ At oral argument on the Town's objections to the Report and Recommendation, the Court requested additional briefing on the issue of the applicability of § 3420(d) to the pollution exclusion clauses in this case. During the additional briefing period, the parties identified to the Court two recent New York Court of Appeals cases, *Worcester Ins. Co. v. Bettenhauser,* 95 N.Y.2d 185, 712 N.Y.S.2d 433, 734 N.E.2d 745 (2000) and *Agoado Realty Corp. v. United Int'l Ins. Co.,* 95 N.Y.2d 141, 711 N.Y.S.2d 141, 733 N.E.2d 213 (2000). Those cases held that a timely disclaimer based on § 3420(d) is necessary when denial of insurance coverage is based on a policy exclusion without which the claim would be covered. That is the case here. Denial of coverage by the third-party defendants is based on the pollution exclusion clause, without which the Town's claims would be covered. Accordingly, it appears that *Worcester* and *Agoado* are directly contrary to the Magistrate Judge's reasoning that § 3420(d) does not apply to the pollution exclusion clauses in this case simply because they are exclusions to the policy.

Nevertheless, the Court finds that § 3420(d) is inapplicable in this case for a different reason. By its express terms, § 3420(d) applies only when the underlying bodily injury or death claim arises out of an "accident." *See First Financial Ins. Co. v. Jetco Contracting Corp.,* 2000 WL 1013945 at *6 (S.D.N.Y. July 21, 2000). An intentional act cannot constitute an ac-

---

1. The Town concedes that § 3420(d) does not apply to the underlying CERCLA action as it does not involve "death or bodily injury."

cident. *Id.* The claims of death and bodily injury in the underlying actions in this case arise not from an accident, but from the Town's long-term, intentional discharges of waste at the Pfohl Site. New York courts have repeatedly held that such purposeful discharges into a landfill cannot be deemed accidental, as a matter of law. *See Technicon Elec. Corp. v. American Home Assurance Co.,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 532–33, 542 N.E.2d 1048 (1989); *Powers Chemco, Inc. v. Federal Ins. Co.,* 144 A.D.2d 445, 533 N.Y.S.2d 1010, 1011–12 (N.Y.App.Div.1988), *aff'd,* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989). Nor are such discharges unexpected or unintended. *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1428 (2d Cir.1991) (the long term and repeated release of hazardous waste upon land or into a watercourse cannot be considered accidental). Thus, because the injuries in the underlying cases did not arise from an "accident," § 3420(d)'s timely notice requirement does not apply.[2]

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation and herein, the Court hereby grants third-party defendants' motions for summary judgment, denies plaintiff TIG's motion for summary judgment, and denies defendant Town's cross-motion for summary judgment. Plaintiff TIG's motion to file supplemental papers is hereby denied. The Court hereby refers the matter back to Magistrate Judge Foschio for a determination as to what additional proceedings, if any, are required in this case.

IT IS SO ORDERED.

## DECISION AND ORDER

Order on Motion to Amend

### *INTRODUCTION*

Currently before the Court is the motion of plaintiff, TIG Insurance Company ("TIG"), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to amend or alter the Court's Order filed September 29, 2000 (the "Sept. 29th Order"), in which, *inter alia,* the Court denied TIG's motion for summary judgment. For purposes of this Decision and Order, the Court will assume familiarity with its Sept. 29th Order and the Report and Recommendation issued by Magistrate Judge Leslie G. Foschio on March 10, 2000. Defendant Town of Cheektowaga (the "Town") opposes TIG's motion to alter or amend the Sept. 29th Order. Oral argument on the motion was held on January 10, 2001.

---

2. The recent case of *American Ref–Fuel Co. of Hempstead v. Employers Ins. Co. of Wausau,* 265 A.D.2d 49, 705 N.Y.S.2d 67 (N.Y.App.Div. 2000), is not necessarily contrary to the Court's holding in this case. In *American Ref–Fuel,* the operator of a municipal incinerator brought a coverage action against its insurance carrier for claims brought by a landfill employee. The employee alleged injury from the "negligent processing of ash" deposited at the landfill. He claimed that the incinerator operator failed to add sufficient moisture to the ash, allowing it to become airborne at the landfill where the employee was required to work.

Significantly, there is no factual reference in the reported record regarding the disposal of the ash at the landfill, the duration of the employee's exposure to the ash, or whether the ash was intentionally permitted to fly about. According to the appellate court, the insurance carrier did not issue a timely disclaimer of coverage to the incinerator operator under the pollution exclusion contained in its policy. A unanimous appellate panel found that Insurance Law § 3420(d) applied, precluding the insurance carrier from relying on the pollution exclusion in denying coverage to the incinerator operator.

It is not clear that reasoning applied in *American Ref–Fuel* would apply here, where the alleged injuries arise from long-term, intentional dumping of waste.

After reviewing the submissions of the parties and hearing argument from counsel, the Court denies TIG's motion to amend or alter the Sept. 29th Order.

### *DISCUSSION*

New York Insurance Law § 3420(d) provides:

> If under a liability policy delivered or issued for delivery in [New York], an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within [New York], it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

In its Sept. 29TH Order, the Court found that the timely notice of disclaimer requirement in § 3420(d) does not apply in this case because the Town's intentional, long-term discharges into the landfill did not constitute an "accident" for purposes of § 3420(d).

According to TIG, its insurance policies in this case provide coverage only for an "accident." TIG argues that if the Town's intentional, long-term discharges into the landfill did not constitute an "accident" for purposes of § 3420(d), then the Town's actions also did not constitute an "accident" for purposes of policy coverage. The Court finds this argument without merit.

■■ Section 3420(d), by its express language, contemplates that the notice requirement is not triggered until there is some definitive, injury-causing event, such as a motor vehicle accident. Thus, the Court applied a narrow definition of "accident" for purposes of the statute, holding that an "accident" could not include an intentional, long-term series of actions.

The Court's decision was limited to the applicability of § 3420(d) to the facts present here.

TIG wants the Court to apply the same narrow definition of "accident" it applied to § 3420(d) in determining the scope of coverage under TIG's insurance policies. The Second Circuit, however, has recently rejected the application of such a narrow definition of "accident" for purposes of determining coverage under an insurance policy. In *Olin Corp. v. Insurance Co. of N. Am.,* 221 F.3d 307 (2d Cir.2000), an insured pesticide company sued its liability insurers to recover costs of a government-mandated environmental cleanup at several plants. The district court held in favor of the insured and the insurance companies appealed. On appeal, the insurance companies argued that the term "accident," as used in its insurance policies, only covered an injury-causing event that happens abruptly or quickly. The Second Circuit disagreed, holding that under New York law, the word "accident" in a comprehensive general liability insurance policy includes unintended damage, irrespective of the time period over which it occurred and regardless of the initial intent or lack thereof as it relates to causation. *Id.* at 317.

In this case, while there were intentional, long-term discharges of waste into the landfill by the Town, the resulting injuries alleged by the plaintiffs in the underlying cases were an unintentional consequence of the discharges and therefore constituted an "accident" for purposes of policy coverage. *Id.*

The Court's definition of "accident" for purposes of § 3420(d) and the definition of "accident" articulated by the Second Circuit in *Olin* for purposes of policy coverage are not inconsistent. Indeed, this Court held in its Sept. 29th Order that, but for the pollution exclusion clauses in the third-

party defendants' insurance policies, there would have been coverage under the policies. This holding is consistent with *Olin*. Nevertheless, the Court applied a narrow definition of "accident" for purposes of § 3420(d) based on the way the term "accident" is used in that statute. As stated above, the statute contemplates a distinguishable injury-causing event as opposed to an injury-causing series of events that happened over a substantial period of time.

## CONCLUSION

For the reasons stated, TIG's motion to alter or amend the Court's Sept. 29th Order is denied.[1] The case is referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This case was referred to the undersigned on August 22, 1997, by the Honorable Richard J. Arcara for report and recommendation on dispositive motions. The matter is currently before the court on motions for summary judgment filed on March 11, 1998, by Third Party Defendant Century Indemnity Company[1] (Docket Item No. 16), on July 16, 1999 by Third Party Defendants Maryland Casualty Company (Docket Item No. 46), The Travelers Indemnity Company and Travelers Casualty and Surety Company[2] (Docket Item No. 48), and United States Fidelity & Guaranty Company (Docket Item No. 53), and Plaintiff TIG Insurance Company (Docket Item No. 50), and on Defendant Town of Cheektowaga's cross-motion for partial summary judgment filed September 15, 1999 (Docket Item No. 57).

## BACKGROUND

Plaintiff, TIG Insurance Company ("TIG"), commenced the above action on July 3, 1997, seeking declaratory relief that TIG is neither obligated to defend nor indemnify Defendant, Town of Cheektowaga ("the Town"), for costs expected and incurred with regard to the clean-up of hazardous waste contamination at the Pfohl Brothers Landfill site ("the Landfill") in Cheektowaga, New York and related personal injury actions filed by plaintiffs who lived, worked and recreated near the Landfill. TIG also seeks a judgment directing the Town to return monies TIG mistakenly advanced under insurance policies between it and the Town in effect at

---

1. In reviewing its Sept. 29th Order, the Court discovered that it mis-cited a case therein. On page 5 of the Order, the Court cited the case of *First Financial Ins. Co. v. Jetco Contracting Corp.*, 2000 WL 1013945 *6 (S.D.N.Y. Jul.21, 2000). The Court did not intend to cite that case but meant instead to cite the case of *First Financial Ins. Co. v. XLNT Recovery Specialist, Inc.*, 2000 WL 943499 at *6 (S.D.N.Y. Jul.7, 2000). The Court shall issue an Amended Order reflecting that change.

1. Century Indemnity Company represents that it is the successor to CCI Insurance Company, the successor to Insurance Company of North America, designated in the Third Party Complaint as CIGNA Property and Casualty

Companies. Memorandum of Law of Century Indemnity Company as Successor to CCI Insurance Company, as Successor to Insurance Company of North America, Improperly Designated CIGNA Property and Casualty Companies, for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Docket Item No. 18), at 1–2.

2. The *Travelers Indemnity Company* maintains that it was incorrectly sued as the Travelers Insurance Company and that Travelers Casualty and Surety Company was formerly known as Aetna Casualty and Surety Company. Memorandum of Law in Support of Travelers' Motion for Summary Judgment (Docket Item No. 48) at 1.

the time of the contamination. On August 11, 1997, the Town filed its answer, asserting affirmative defenses and counterclaims. TIG's answer to the Town's counterclaims was filed October 6, 1997.

The Town's motion for leave to file third party complaints, filed on December 11, 1997, was granted on December 31, 1997. Accordingly, on January 5, 1998, the Town filed a third-party complaint against Third Part Defendants Aetna Casualty & Surety Company ("Aetna"), CIGNA Property & Casualty Inc. Co. ("Century"), Maryland Casualty Co. ("Maryland Casualty"), The Travelers Insurance Company ("Travelers"), and United States Fidelity & Guaranty Co. ("USF & G"), seeking declaratory relief as to Third Party Defendant's obligations to defend and indemnify the Town in pending litigation involving the Landfill. Answers to the Third Party Complaint were filed by Travelers on March 23, 1998, Maryland Casualty on April 6, 1998, and USF & G on May 11, 1998.[3]

On March 11, 1998, Third Party Defendant Century Indemnity ("Century"), successor in interest to CCI, as successor in interest to Insurance Company of North America, incorrectly designated as CIGNA Insurance, filed a motion for summary judgment (Docket Item No. 16), supported by the Affidavit of Alice Ann Previte, Esq. (Docket Item No. 17) ("Previte Affidavit"), and a Statement of Undisputed Facts and Memorandum of Law (Docket Item No. 18) ("Century's Memorandum"). Consideration of the motion was deferred pending discovery limited to the issues of late notice and pollution exclusion clauses which was then conducted. At a pretrial conference held on May 17, 1999, the parties reported that such discovery was complete.

In further support of summary judgment, on May 14, 1999, Century filed a Supplemental Memorandum of Law in letter form (Docket Item No. 42) ("Century's Supplemental Memorandum"), and the Supplemental Declaration of Alice Previte (Docket Item No. 43) ("Previte Declaration"). Additional motions for summary judgment were filed on July 16, 1999 by the remaining Third Party Defendants and Plaintiff including (1) Maryland Casualty (Docket Item No. 46), supported by a Memorandum of Law (Docket Item No. 47) ("Maryland Casualty Memorandum"), and a volume of exhibits; (2) Travelers (Docket Item No. 48), supported by a Memorandum of Law (Docket Item No. 49) ("Travelers Memorandum"), and three volumes of exhibits; (3) TIG (Docket Item No. 50), supported by a Memorandum of Law (Docket Item No. 51) ("TIG Memorandum"), a statement of undisputed facts (Docket Item No. 52), and a volume of exhibits; and (4) USF & G (Docket Item No. 53), supported by a Memorandum of Law (Docket Item No. 54) ("USF & G Memorandum"), the Affidavit of Patrick M. Tomovic, Esq. ("Tomovic Affidavit") and the Affidavit of Douglas Rallis ("Rallis Affidavit") with attached exhibits.[4]

On September 15, 1999, the Town filed a cross-motion for partial summary judgment (Docket Item No. 57), accompanied by a Memorandum of Law (Docket Item No. 58) ("Town Memorandum"), a statement of facts (Docket Item No. 59), and exhibits. Additional papers filed in support of these motions on October 15, 1999 include Travelers Supplemental Memorandum (Docket Item No. 61) and Local Rule 56 Statement of Facts (Docket Item No. 62), an Affidavit by Carolyn Henry, Esq. in

---

3. Century has not filed an answer to the Third Party Complaint.

4. The Tomovic Affidavit and Rallis Affidavit are attached to USF & G Notice of Motion (Docket Item No. 53).

further support of TIG's motion for summary judgment (Docket Item No. 63) ("Henry Affidavit"), TIG Supplemental Memorandum (Docket Item No. 64), Maryland Casualty Supplemental Memorandum (Docket Item No. 65), Century Supplemental Memorandum (Docket Item No. 66), and Response to the Town's statement of undisputed facts (Docket Item No. 67), and USF & G Supplemental Memorandum (Docket Item No. 68). Oral argument was deemed unnecessary.

Based on the following, TIG's motion (Docket item No. 50) should, upon the ground of late notice, be DENIED as that ground was waived or, alternatively, based on untimely notice, DENIED as to the personal injury actions, but GRANTED as to the CERCLA action; in either event, TIG's request for reimbursement of legal fees advanced should be DENIED. Century's motion (Docket Item No. 16) should, based on the pollution exclusion, be GRANTED or, alternatively, based on untimely notice, DENIED as to the personal injury actions and GRANTED as to the CERCLA action. Maryland Casualty's motion (Docket Item No. 46) should, based on the pollution exclusion, be GRANTED or, alternatively, based on untimely notice as to the CERCLA, *Freier, Batt, Astor* and *Davies* actions, GRANTED, and DENIED as to the *Fiels* and *Anthony* actions. Travelers' motion (Docket Item No. 48) should, based on the pollution exclusion and independent contractors clause, be GRANTED or, alternatively, based on untimely notice, DENIED as to the personal injury actions and GRANTED as to the CERCLA action. USF & G's motion (Docket Item No. 53), should, under the pollution exclusion, be GRANTED or, alternatively, based on untimely notice, GRANTED as to all underlying actions. Town of Cheektowaga's cross-motion (Docket Item No. 57), should be DENIED.

## FACTS

Plaintiff TIG and Third Party Defendants Century, Maryland Casualty, Travelers and USF & G ("the insurers") are insurance companies which issued primary and excess comprehensive general liability insurance policies to the Town between March 30, 1961 and March 30, 1986. The Complaint and Third Party Complaints seek determination of the insurers' obligations to defend and indemnify the Town with respect to claims pending in this court arising out of the Town's alleged responsibility as a generator and transporter of hazardous waste to the Landfill.

### The Underlying Claims

The underlying actions in this case arise from the contamination of the 120 acre Pfohl Brothers Landfill, located in the northeastern corner of the Town of Cheektowaga, New York, a suburban area adjacent to the City of Buffalo. The Landfill is listed on the New York State Registry of Inactive Hazardous Waste Disposal Sites, indicating the state considers the Landfill to be a public health threat. Many hazardous wastes were deposited into the Landfill between 1932 and 1972. Between 1950 and 1953, approximately 20% of the Town's municipal garbage collections were deposited into the Landfill. The Town also disposed of waste materials into the Landfill from the early 1950s through the 1960s.

By letter dated May 13, 1986, the New York State Department of Environmental Conservation ("the DEC"), informed the Town that, in connection with the DEC's designation of the Landfill as an inactive hazardous waste disposal site, the Town had been identified as a generator or transporter of hazardous wastes to the Landfill ("the 1986 DEC letter"). The 1986 DEC letter specifically advised the Town that

The Division of Environmental Enforcement of the New York State Department of Environmental Conservation is evaluating certain inactive hazardous waste disposal sites within the State which have been identified and listed in the registry of such sites prepared by the Division by the Department. Among the sites assigned to this Division is the Pfohl Brothers Landfill; Site # 915043 located off Aero Drive in the Town of Cheektowaga, Erie County. Existing information establishes that this site was used for the disposal of wastes of many types during the period of years of approximately from 1950 to 1970. Existing information also establishes that you utilized this site. Your use of this site may have been either as a generator or wastes, or as a transporter of wastes, or both. Records reflect direct contemporaneous communications between you and the site operators.

1986 DEC letter, p. 1, Town Exhibit F.[5]

The DEC also requested the Town provide information concerning its activities relevant to the Landfill. *Id.*

The Town responded to the DEC on November 21, 1986, acknowledging its disposal of wastes at the Landfill until June 20, 1953. On December 16, 1989, the DEC advised the Town that it was in possession of business records indicating the Town was a heavy user of the Landfill until at least mid–1962 and that by September 1956 there was a substantial increase in the amount of waste materials the Town deposited into the Landfill. Further information was requested including information pertaining to business for whom the Town provided waste collection services as indicated in commercial and industrial account records. In December 1991, the DEC published its plans for cleaning up the Landfill. Copies of these plans were posted in the Town.

By letter dated April 2, 1992, the DEC advised that the Town was considered a potentially responsible party ("PRP") with regard to the hazardous waste contamination at the Landfill ("the 1992 DEC letter"). The Town was invited to voluntarily conduct or finance on-site remedial design and action for the Landfill; otherwise, the DEC could remediate the Landfill and seek recovery of the remediation costs through litigation.

By letter dated May 2, 1992, R. Williams Stephens, Esq., advised the Town of the remediation costs for which, as a PRP for the Landfill hazardous waste contamination, it could reasonably expect to be held responsible. Mr. Stephens further cautioned that in the event of related litigation, the Town would likely either be named as a defendant in the original action, or be brought in later as a third party defendant.

As Stephens predicted, the Town has been sued in litigation related to the hazardous waste it deposited into the Landfill. The litigation to which the instant action is directed includes an action for recovery of costs, contribution and declaratory relief under §§ 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, and six personal injury actions, all filed in this court.[6]

Specifically, the Town is sued as a defendant in *Pfohl Brothers Landfill Site Steering Committee v. Pfohl Enterprises,* No.

---

5. Exhibits submitted by the Town in opposition to Plaintiff's and Third Party Defendants' summary judgment motions are attached to the Town's Notice of Cross–Motion (Docket Item No. 57).

6. Actions raising similar toxic tort claims as to other plaintiffs are pending in New York Supreme Court.

95–CV–956A(F) ("the CERCLA action"), filed November 7, 1995. In that action, the Town is alleged to have transported hazardous waste generated by the Town, its residents and commercial and industrial businesses to the Landfill for disposal. Such activities allegedly took place while the Landfill was in operation.

The Town has also been sued as a Third Party Defendant in six personal injury actions ("the personal injury actions") brought by plaintiffs who allegedly suffered bodily injury and death as a result of exposure to contaminants that migrated from the Landfill into the ambient air, ground water and soil. Those actions include *Freier v. Westinghouse,* No. 95–CV–20A(F) (*"Freier"*), *Batt v. Westinghouse,* 95–CV–107A(F) (*"Batt"*), *Astor v. Westinghouse,* 95–CV–247A(F) (*"Astor"*), *Davies v. Westinghouse,* 95–CV–444(A)(F) (*"Davies"*), *Fiels v. Westinghouse,* 96–CV–395A(F) (*"Fiels"*), and *Anthony v. Westinghouse,* 97–CV–19A(F) (*"Anthony"*). Third Party Complaints against the Town were filed in *Freier* and *Batt* on April 27, 1995, in *Astor* on June 9, 1995, in *Davies* on August 10, 1995, in *Fiels* on August 23, 1996 and in *Anthony* on March 6, 1997.[7] It is evident from the Third Party Complaints that the underlying claims on which they are premised seek to recover for personal injuries and death allegedly caused by exposure to hazardous substances deposited into the Landfill by the Town and others. The Third Party Complaints allege three causes of action against the Town with regard to the personal injury actions including (1) negligent disposal of hazardous waste which the Town knew or should have known could migrate into the surrounding environment, (2) strict liability based on the release, disposal and maintenance of ultra-hazardous and abnormally dangerous materials at the Landfill, and (3) gross negligence. The third party complaints do not specify on what dates the Town allegedly released, disposed of or maintained the hazardous substances at the Landfill.

### The Insurance Policies

The parties do not dispute that they issued insurance policies covering the Town as alleged in the Complaint and Third Party Complaint, although there was some difficulty in locating some of the policies.[8] TIG issued the Town eight primary general liability policies effective March 30, 1961 through March 30, 1971. Century issued the Town a primary insurance policy effective April 1, 1981 to April 1, 1982. A primary insurance policy was issued to the Town by Maryland Casualty, effective March 30, 1982 through March 30, 1984. A multi-peril policy issued to the Town by Aetna provided insurance coverage for the period March 30, 1977 to March 30, 1980.[9] Travelers issued the Town an indemnity insurance policy effective March 22, 1966 to March 22, 1967. A comprehensive general liability insurance policy was issued by USF & G to the

---

7. Although the record demonstrates that all the Town provided all the insurers with copies of the relevant pleadings in the CERCLA, *Freier, Batt, Astor* and *Davies* actions, *see, e.g.,* Town Exhibit Nos. C, P, S, Travelers Exhibit 68, and 71, and USF & G Exhbit A, it is not clear whether all the insurers received copies of the relevant pleadings filed in *Fiels* and *Anthony.*

8. Although the motion papers indicate some of the insurance policies could not be located, the parties do not dispute that all relevant insurance policies have since been located. *See* Discussion, *infra,* at 371, n. 19, 374–75.

9. Following Travelers Property Casualty Corp.'s April 2, 1996, purchase of The Aetna Casualty and Surety Company ("Aetna") through stock acquisition, Aetna changed its name to Traveler's Casualty and Surety Company. Traveler's Memorandum at 4, n. 3.

Town, effective March 30, 1984 through March 30, 1985.

The Town does not dispute that the insurance policies issued by Century, Maryland Casualty, Aetna and USF & G all contain a "pollution exclusion" which provides that insurance coverage does not apply to

> personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Although the quoted pollution exclusion is from the policy issued by Century, Century Exhibit J,[10] the pollution exclusions contained in the other insurance policies are substantially similar and except from such exclusion any discharge, dispersal, release or escape of a contaminant that is "sudden and accidental." *See* Maryland Casualty Exhibit 3,[11] Traveler's Exhibit 10,[12] and USF & G Exhibit F and G.[13] The policies issued by TIG and Travelers do not contain the pollution exclusion; however, the Travelers policy covers only the conduct of

independent contractors. Travelers Exhibit 11.

All the policies at issue, including those issued by TIG and Travelers, require that the Town timely notify the insurer when seeking defense or indemnification under the policies. Specifically, the TIG, Century, Maryland Casualty, Aetna and USF & G policies require written notification of an occurrence "as soon as practicable," and, if a claim or suit is commenced against the insurer, that every demand, notice, summons or other process be forwarded to the insurer "immediately." *See* TIG Exhibits D–J,[14] Exhibit Q to Henry Affidavit; Century Exhibit J; Maryland Casualty Exhibit 3; Travelers Exhibit 10 (Aetna policy), and USF & G Exhibits F & G. Travelers' policy requires notification of any accident "as soon as practicable." Travelers Exhibit 11.

### *DISCUSSION*

#### 1. *Summary Judgment*

The insurers and the Town have all moved for summary judgment declaring each insurer's obligations under the relevant insurance policies to defend and indemnify the Town with respect to the personal injury and CERCLA actions.[15] Summary judgment of a claim or defense will be granted when the moving party

---

10. Century's exhibits submitted in support of summary judgment are attached to Previte Affidavit (Docket Item No. 17).

11. Numbered exhibits submitted by Maryland Casualty in support of summary judgment are attached to Maryland Casualty's Appendix of Exhibits while lettered exhibits are attached to Maryland Casualty Reply.

12. Exhibits submitted by Travelers in support of summary judgment are contained in the Appendix of Exhibits to the Affidavits of Charles L. Kerr, Esq. ("Kerr Affidavit"), and Patricia H. Kelly ("Kelly Affidavit"), which is bound in two volumes.

13. The referenced exhibits submitted by USF & G in support of summary judgment are attached to Rallis Affidavit, attached to USF & G's Notice of Motion filed July 16, 1999 (Docket Item No. 53).

14. Exhibits submitted by TIG in support of summary judgment are bound in a volume of exhibits entitled "Exhibit Book for Plaintiff TIG Insurance Company."

15. Although related actions are pending in state court, the insurers seek such declaratory relief only with regard to the actions filed in this court.

demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. 2548.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir.1998).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga, supra,* at 18 (citing cases).

■ A district court sitting in diversity applies the substantive law of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Thrift Drug, Inc. v. Universal Prescription Administrators*, 131 F.3d 95, 97 (2d Cir.1997). Here, the parties do not dispute that the law of New York, the forum state, applies.

The instant motions concern whether the insurers are obligated to defend or indemnify the Town with regard to the underlying actions. This determination turns on whether the Town's conduct upon which the underlying actions are based are within the insurance policies' pollution exclusions or were performed by Town employees rather than independent contractors, whether the Town breached the

timely notification provisions of the policies, and whether the insurers have waived their asserted grounds to disclaim or deny coverage by failing to timely disclaim.

## A. *The Pollution Exclusions*

Third Party Defendant Century, Maryland Casualty, Travelers (with regard to the Aetna policy), and USF & G contend that the pollution exclusions contained in the insurance policies issued to the Town negate any obligation to defend or indemnify the Town with regard to the underlying actions. The Town argues that as the allegations contained in the complaint filed in the CERCLA action and the third party complaints filed in the underlying personal injury actions do not specify how the contaminants were discharged into the environment, the complaints do not negate any possibility that the migration of the contaminants into the ambient air, soil and ground water was sudden and accidental, a genuine issue of material facts as to whether the pollution exclusion applies exists. As stated, the pollution exclusion excludes from coverage liability for any discharge of contaminants that is not "sudden and accidental."

■ An insurer's duty to defend is broader than the duty to indemnify. *EAD Metallurgical Inc. v. Aetna Casualty and Surety Co.*, 905 F.2d 8, 11 (2d Cir.1990). Separate analysis of the insurers' duties to defend and indemnify is thus unnecessary. *Id.*

■ An insurer's duty to defend is derived from the allegations of the complaint and the terms of the policy. *Technicon Electronics Corporation v. American Home Assurance Company*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048, 1050 (1989). "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.' " *Frontier Insulation Contractors, Inc. v. Merchants Mutual Ins. Co.*, 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868 (1997) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 90 (1991)). It is the initial discharge or dispersal of the waste into the environment, rather than the resulting contamination, which is considered in determining whether the claim is within the terms of the pollution exclusion. *See Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301, 1302 (1989) (disposals considered with regard to pollution included buried drums of waste, dumping of waste directly into pit at dumpsite and discharging waste through pipe that lead to dumpsite pit, rather than eventual migration of contamination off site).

■ When an exclusion clause is relied on to deny coverage, it is the insurer's burden to demonstrate the allegations of the underlying claims allege damages attributable to the specific conduct for which coverage has been excluded. *Northville Industries Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 657 N.Y.S.2d 564, 679 N.E.2d 1044, 1048 (1997); *Technicon, supra,* at 1050. Once an insurer satisfies its burden of proof that the claims are within the pollution exclusion, the burden shifts to the insured to demonstrate, either through a reasonable interpretation of the underlying complaint or extrinsic evidence, that the discharge was in fact "sudden and accidental." *Northville, supra,* at 1048. "Shifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist, provides the insured with

an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge." *Northville, supra,* at 1049.

In the instant case, it is undisputed that the pollution exclusion applies to the underlying claims which seek damages for the discharge of pollutants into the environment. Accordingly, the burden shifts to the Town, as the insured, to demonstrate that either a reasonable interpretation of the complaint or extrinsic evidence indicates such discharge was "sudden and accidental," thereby negating the pollution exclusion and requiring coverage. *Northville, supra,* at 1048. The record demonstrates the Town has not met its burden of establishing a material issue as to whether the Town's disposal of hazardous wastes at the Landfill were both sudden and accidental.

■■■■ "Sudden" and "accidental" have separate meanings and both must be established for the exception to apply. *Northville, supra,* at 1047; *See Technicon, supra,* at 1049 ("If the discharge is not both sudden and accidental, the exception in inapplicable and, therefore, the pollution exclusion from coverage provision is operative."). The requirement that a discharge of a contaminant be "sudden" is a temporal element which is met only "by the discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect." *Northville, supra,* at 1048. As every dispersal of a contaminant begins with "the abrupt entry of molecules of the offending substance into the surrounding environment," the sudden discharge element is not established by demonstrating the specific time at which the discharge began, as such a

construction of the exception would render its suddenness requirement meaningless. *Northville, supra,* at 1047 (quoting *Northville Industries Corporation v. National Union Fire Insurance Company of Pittsburgh,* 218 A.D.2d 19, 636 N.Y.S.2d 359, 366 (App. Div.2d Dep't 1995)).

■■■■ The term "accidental" as used in the pollution exclusion "includes not only an unintended event but also one 'occurring unexpectedly or by chance.'" *Northville, supra,* at 1047 (quoting Webster's 9th New Collegiate Dictionary at 49). A discharge resulting from purposeful conduct is not accidental, *Powers Chemco, supra,* at 1302, and is thus not accidental within the meaning of the exception. *Technicon, supra,* at 1050–51.

In the instant case, the Town asserts that as discovery in the underlying personal injury actions has been limited to statute of limitations issues, the Town has been unable to review any evidence on which the third party plaintiffs in the personal injury actions will rely in attempting to prove their claims and the Town has been unable to determine whether any party is in possession of evidence of sudden and accidental discharges of waste at the Landfill. Town Memorandum at 6. Although the Town premises its inability to present any extrinsic evidence demonstrating the existence of a genuine issue of material fact that the Town's initial discharge of the pollutants into the environment was sudden and accidental, the Town has not moved under Rule 56(f) for discovery on that issue with respect to the instant motions. Further, the limited discovery conducted by the parties with respect to this action did authorize discovery necessary to determine whether the pollution exclusion applied to the underlying claims, and the parties reported at the May 17, 1999 pretrial conference that discovery was complete. Therefore, the

Town has had a fair opportunity to obtain the information needed to meet its burden of demonstrating the exception to the relevant exclusion applies. Accordingly, the Town has not met its burden of demonstrating the exception to the pollution exclusion applies based on extrinsic evidence; rather, the Town attempts to meet its burden on the basis that the underlying claims do not negate a construction that such discharges were sudden and accidental.

■ Whether the claimed discharge is within the pollution exclusion is determined based on the initial discharge of the pollutant into the environment. *Powers Chemco, supra,* at 1302; *Employers Insurance of Wausau v. The Duplan Corp.,* 1999 WL 777976, *10–11, 1999 U.S.Dist. Lexis 15368, *35–40 (S.D.N.Y.1999) (citing New York cases). In cases involving the intentional disposal of hazardous waste, the discharge that is considered the initial discharge for the purpose of determining whether the sudden and accidental exception applies is also the insured's disposal of contaminants in the landfill as opposed to an unintended subsequent dispersal of the contaminants, such as through leaking buried drums or the leaching of dumped waste into the soil and groundwater. *Duplan, supra,* 1999 WL 777976, *10–11, 1999 U.S. Dist. Lexis 15368, *38–40 (citing New York cases).

■ Here, the alleged initial discharge of pollutants in the underlying claims is an intentional and long-term disposal of hazardous wastes into the Landfill which has been routinely held under New York as manifestly not sudden and accidental. *See New York v. AMRO Realty Corp.,* 936 F.d 1420, 1427–28 (2d Cir.1991) (long-term disposal of hazardous wastes including through drains into an open ditch not "sudden and accidental"); *Duplan Corp. supra,* (routine discharge of chemical pollutant into open pit outside manufacturing facility not "sudden and accidental"); *Powers Chemco, Inc. v. Federal Insurance Co.,* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301, 1302 (1989) (pollution exclusion prevented coverage for property damage claims arising out of disposal of pollutants at dump site in buried drums, and by dumping and discharging through pipe into pits); *Hitchings v. Home Ins. Co.,* 190 A.D.2d 1030, 593 N.Y.S.2d 650, 651 (App. Div. 4th Dep't 1993), *lv. denied,* 82 N.Y.2d 652, 601 N.Y.S.2d 582, 619 N.E.2d 660 (1993) (intentional disposal of bulk waste oil at out-of-state disposal site); *Rochester Smelting & Refining Co., Inc. v. Merchants Mutual Ins. Co.,* 188 A.D.2d 1055, 592 N.Y.S.2d 1012, 1012 (App. Div. 4th Dep't 1992) (long-term disposal of hazardous waste at dump site); *Borg–Warner Corp. v. Insurance Co. of North America,* 174 A.D.2d 24, 577 N.Y.S.2d 953, 957 (App. Div.3d Dep't), *lv. denied,* 80 N.Y.2d 753, 587 N.Y.S.2d 905, 600 N.E.2d 632 (1992) (long-term intentional disposals of hazardous wastes held not within the "sudden and accidental" exception to the pollution exclusion); *Town of Moreau v. Orkin Exterminating Co., Inc.,* 568 N.Y.S.2d 466, 468–69 (App. Div.3d Dep't 1991) (intentional burial of hazardous chemicals over ten-year period). The underlying claims thus allege long-term disposals of hazardous waste by the Town into the Landfill which are not within the pollution exclusion's exception. *See Borg–Warner, supra.*

The Town maintains, however, that the insurer must defend the insured provided any interpretation of the allegations of the underlying complaint are within the scope of the policy, regardless of how groundless or baseless such suit may be. Town Memorandum at 27–28. In support of its argument, the Town relies on *State of New York v. Blank,* 27 F.3d 783 (2d Cir.1994), *Avondale Industries, Inc. v. Travelers In-*

*demnity Co.*, 887 F.2d 1200 (2d Cir.1989), and *Employers Insurance of Wausau v. Trico Products Corp.*, 1997 Lexis 19684 (W.D.N.Y.1997). Town Memorandum at 29–32. In each of those cases, the court held that as the underlying claims on which insurance coverage was claimed failed to specify how the hazardous substances were discharged into the environment, those complaints did not clearly negate an interpretation that such discharges were sudden and accidental, thereby bringing those complaints within the pollution exclusion's exception. *Blank, supra,* at 791; *Avondale, supra,* at 1205–1206; *Trico, supra.*

*Blank* and *Avondale* are distinguishable from the instant action as in both those cases, the insured was involved in activity other than the mere disposal of hazardous waste. Specifically, in *Blank,* the insurer was involved in the manufacture of pesticides on a site that the DEC later declared was contaminated by toxic chemicals. *Blank, supra,* at 786. In *Avondale,* the insurer, in the business of building and repairing commercial and U.S. Navy ships, also removed oils and chemical wastes from the holds of the ships it serviced. *Avondale, supra,* at 1201. The salvage oil was transported to a dump site owned by Avondale where some of it was recycled in Avondale's facility. *Id.* Persons residing near that site commenced actions alleging personal injuries and property damages caused by contaminants emanating from the dump site. *Id.* Although the underlying actions in *Blank* and *Avondale* for which the insureds sought coverage from the insurers did not specify how the contaminants were discharged into the environment, as those insureds were involved in other activities at the site of the alleged contaminations, it is not so implausible that the discharges occurred during normal business operations by the insureds and were both "sudden and accidental."

Here, it is undisputed that the sole basis on which the Town's culpability is pleaded in the underlying actions is the unambiguous fact of long-term intentional disposals of waste into the Landfill, conduct hardly open to subtleties of interpretation or nuances of facts.

■ Further, the New York Court of Appeals' most recent holding on the proper construction of the pollution exclusion contained in many insurance policies, similar to the ones at issue in the instant case, definitively clarifies that "[i]n determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint 'that is linguistically conceivable but tortured and unreasonable.'" *Northville, supra,* at 1049 (quoting *AMRO Realty Corp. supra,* at 1428). Accordingly, the court rejected the assertion that any possible interpretation of the complaint as alleging the subject discharge was sudden and accidental, regardless of how groundless or baseless, defeats the pollution exclusion. *Northville, supra,* at 1049. Additionally, *Trico, supra,* was decided by Judge Arcara in February 1997, without the benefit of *Northville,* decided in March 1997.

In the instant case, the court has reviewed the underlying claims contained in the CERCLA action complaint and the personal injury actions third party complaints. A plain reading of those complaints demonstrates the Town has been sued based on its activities in disposing of alleged hazardous waste into the Landfill which later migrated into the ambient air, ground water and soil. *See Pfohl Brothers Landfill Site Steering Committee, supra,*

No. 95–CV–956A(F), Docket Item No. 1; *Freier, supra,* NO. 95–CV–20A(F), Docket Items Nos. 23 (*Freier*), 181 (*Fiels*), and 264 (*Anthony*); *Batt, supra,* No. 95–CV–107A(F), Docket Item No. 14; *Astor, supra,* No. 95–CV–247A(F), Docket Item No. 14; and *Davies, supra,* No. 95–CV–444A(F), Docket Item No. 26. Unlike the insureds in *Blank* and *Avondale, supra,* the alleged activity for which the Town is sued in the underlying claims is the intentional long-term disposal of hazardous waste at the Landfill. Significantly, The Town is not alleged to have manufactured, handled or further processed such hazardous waste at the Landfill. The construction of the underlying pleadings sought by the Town is precisely the type of implausible and strained reading rejected by *Northville* and is, therefore, insufficient to bring the pleadings within the sudden and accidental exception. *See Duplan, supra,* 1999 WL 777976, *10, 1999 U.S. Dist. Lexis 15368, *37 ("speculation and doubt as to how the discharge, if any, might have occurred is not sufficient to meet the insured's burden of demonstrating coverage.").

As pleaded, the underlying claims can only be reasonably construed as based upon the Town's initial disposal of hazardous waste into the Landfill over a number of years, activity repeatedly held by New York courts as intentional and within an insurance policy's pollution exclusion. *Powers Chemco, supra,* at 1302; *Hitchings, supra,* at 651; *Rochester Smelting & Refining, supra,* at 1012; *Borg–Warner Corp., supra,* at 957; *Town of Moreau, supra,* at 468–49. Accordingly, the underlying claims allege discharges that are within the pollution exclusions, and the Town has failed to demonstrate that such discharges were both sudden and accidental.

## B. *Independent Contractor Clause*

Travelers' policy provides no coverage for damages resulting from the actions or activities of the Town's employees but, rather, contains a provision limiting coverage to damages resulting from conduct by the Town's independent contractors ("the independent contractors clause"). Travelers Memorandum at 5–6; Travelers Reply at 5; Travelers Exhibit 11. The Town has not disputed that the coverage provided by the Travelers policy is limited to liability arising out of operations performed for the Town by independent contractors, arguing instead that Travelers' disclaimer of coverage was untimely. *See* Town Memorandum at 21–23.

The Travelers' policy provides coverage for bodily injury and property damage attributable to one of three hazards, including conduct by independent contractors. Specifically, the policy covers only

> Operations performed for the named insured *by independent contractors and general supervision thereof by the named insured,* if the accident occurs in the course of such operations, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures.

Travelers Policy, Travelers Exhibit 11 (emphasis added).

Further, in support of its motion for summary judgment, Travelers submitted the Town's responses to Requests to Admit in which the Town admitted that all waste sent "by or on behalf of the Town" to the Landfill was transported only by Town employees. Responses to Travelers Notices to Admit Requests Nos. 16 and 17, Travelers Exhibit 15.

A plain reading of the relevant policy demonstrates that coverage is limited to actions by independent contractors and the Town does not argue otherwise. Nor does the Town dispute that it admitted that all waste sent to the Landfill on the Town's behalf was transported only by Town employees. As such, the court finds that the Travelers policy does not provide the coverage the Town seeks with respect to the underlying claims. *Frontier Insulation Contractors, supra*, at 868–69 (where no reasonable interpretation of the pleadings suggests any basis of coverage under the policy, no obligation to defend or indemnify exists).

### C. *Notice, Disclaimer and Waiver*

All the insurers assert that the Town provided untimely notice of the occurrences, claims and suits for which defense and indemnity coverage is sought, thereby violating the notice provisions contained in the insurance policies which are conditions precedent to coverage. The Town asserts that the insurers have waived their asserted grounds to disclaim or deny coverage by failing to timely disclaim. As TIG's insurance policies contain neither a pollution exclusion nor an independent contractor clause as grounds to deny coverage or a defense, the court addresses whether TIG has properly disclaimed or denied coverage based on untimely notification. Further, as this case is before the court for a report and recommendation, should the District Judge disagree with the court's finding that the insurance policies issued by Century, Maryland Casualty, Aetna, Travelers and USF & G provide no coverage with respect to the underlying claims based on either the pollution exclusion or an independent contractors clause, the court addresses, alternatively, whether those insurers have properly disclaimed or denied coverage based on untimely notification.

As stated, each insurance policy required notification by the Town of an occurrence "as soon as practicable" and of a claim or suit "immediately." The Town has conceded that its receipt of the 1986 DEC letter constituted notice of an "occurrence" within the meaning of the insurance policies. Town Memorandum at 16–17. Further, the Town does not dispute that it was required under the policies to notify the insurers immediately upon being served with the complaint filed in the CERCLA action and the third party complaints filed in the personal injury actions. As the circumstances pertaining to each insurer's disclaimer vary, the court first considers the law relevant to the timeliness of notice and waiver issues raised and then applies the law to the particular circumstances surrounding the disclaimer made by each insurer.

Preliminarily, whether the insurers' disclaimers of insurance coverage under the pollution exclusion and independent contractors' clause were timely has no bearing on the court's finding that the Century, Maryland Casualty, Aetna, Travelers and USF & G policies provided the Town with no coverage with respect to any of the underlying claims. Specifically, a failure to timely disclaim will not create coverage that is not otherwise provided for in the policy. *Central General Hospital v. Chubb Group of Insurance Companies*, 90 N.Y.2d 195, 659 N.Y.S.2d 246, 681 N.E.2d 413, 415. (1997) (insurer's untimely disclaimer does not preclude it from disclaiming liability for claim that does not arise out of an insured incident) (citing *Zappone v. Home Insurance Co.*, 55 N.Y.2d 131, 447 N.Y.S.2d 911, 432 N.E.2d 783, 786 (1982)); *Albert J. Schiff, Associates, Inc. v. Flack*, 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84, 88 (1980) (holding an insurer does not lose its right to disclaim based on noncoverage as such ground is never

waived by a failure to assert it in a notice of disclaimer). Where the policy excludes the claimed incident from its coverage, there is no contractual relationship with respect to that incident. *Zappone, supra,* at 786. Even assuming, *arguendo,* that any insurer failed to timely disclaim, a delayed disclaimer does not avoid application of either the pollution exclusion or independent contractor clause where they would otherwise apply. *Zappone, supra.* Thus, the only waivable ground asserted by the insurers is untimely notification.

■ In determining the timeliness of notice of a disclaimer, the court must first determine when the obligation on the part of the insured to give notice accrued, and then whether the insured did in fact provide timely notice. *Olin Corp. v. Ins. Co. of North America,* 743 F.Supp. 1044, 1053 (S.D.N.Y.1990), *aff'd,* 929 F.2d 62 (2d Cir.1991). In New York, the insured's duty to notify is not triggered upon receipt of a formal PRP letter or summons and complaint. *Ogden Corp. v. Travelers Indemnity Co.,* 924 F.2d 39, 43 (2d Cir.1991). Instead, the obligation to provide notice of an occurrence accrues when the facts known to the insured would have suggested to a reasonable person the possibility of a potentially covered claim. *Commercial Union Ins. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 272 (2d Cir.1987); *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.,* 748 F.2d 118, 122 (2d Cir.1984). Compliance with notice requirements is a condition precedent to an insurer's liability under the policy, *International Flavors, supra,* at 271, and failure to comply with the notice requirement relieves an insurer of its duties to defend and indemnify, even where there has been no showing by the insurer of prejudice to itself. *Unigard Security Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 584 N.Y.S.2d 290, 594 N.E.2d 571, 573 (1992);

*Security Mutual Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76, 78 (1972).

The Town asserts that New York Insurance Law § 3420(d) requires an insurer notify the insured of its intent to disclaim liability or deny coverage as soon as is reasonably possible and that the failure to do so renders the disclaimer or denial ineffective, regardless of whether the insured provided timely notice of the occurrence or claim. Town Memorandum at 17 (citing *Matter of Firemen's Funds Ins. Co. v. Hopkins,* 88 N.Y.2d 836, 644 N.Y.S.2d 481, 666 N.E.2d 1354, 1355 (1996), and *State Farm Mutual Automobile Ins. Co. v. Clift,* 249 A.D.2d 800, 671 N.Y.S.2d 843 (App.Div.3d Dep't.1998)). As noted, the Town has conceded that its receipt of the 1986 DEC letter was an occurrence sufficient to trigger the notification requirement under the policies. Town Memorandum at 16–17. This concession is consistent with prior determinations by this court involving similar official communications received by suspected PRPs with respect to the Landfill. *See F.N. Burt Co. v. Aetna Casualty & Surety Co.,* 91–CV–30A(F) (W.D.N.Y. March 14, 1995); and *Trico, supra.* The insurers do not dispute, and thus have conceded, that they are required to provide timely notification of disclaimer or denial of coverage, but dispute that the 1986 DEC letter triggered that duty.

Under New York Insurance Law § 3420(d),

> If under a liability policy delivered or issued for delivery in [New York], an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within the state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of

coverage to the insured and the injured person or any other claimant. N.Y. Ins. Law § 3420(d) (McKinney 1985) (" § 3420(d)").

The term "accident" as used in § 3420(d) refers to " 'an event which under the circumstances is unusual and unexpected by the person to whom it happens.' " *Agoado Realty Corp. v. United International Insurance Co.*, 260 A.D.2d 112, 699 N.Y.S.2d 335, 338 (App. Div. 1st Dep't 1999) (quoting BLACK'S LAW DICTIONARY, 5th ed., and citing cases in support and holding that under § 3420(d) insurer waived its right to disclaim based on "unusual or unexpected" injury). Here, the claims for which coverage is sought arise from alleged injuries to the individuals named as plaintiffs in the underlying personal injury actions. Accordingly, as to the personal injury actions, § 3420(d) required the insurers' notices of disclaimer to be timely and the parties do not argue otherwise. Further, delays in disclaiming or denying coverage as brief as two months have been held sufficient to waive the ground on which the disclaimer or denial of coverage is premised. *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061, 1063 (1979) ("Where, however, as here, there is absolutely no explanation for the delay provided by the insurer, a delay of two months is, as a matter of law, unreasonable.").

As § 3420(d) is, by its own terms, limited to actions for bodily injury or death, the insurers' asserted untimely disclaimers can result in waiving untimely notification as a bar to coverage with regard to the underlying personal injury actions. However, as the CERCLA action is for cleanup costs and not bodily injury or death, § 3420(d) is not applicable to such claim and delay in disclaimer of a claim outside § 3420(d) must be shown to have resulted in prejudice to the insured in order to constitute a waiver by the insurer. *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612 N.Y.S.2d 441, 443 (App. Div.2d Dep't 1994) (where § 3420(d) inapplicable to claim not involving death or bodily injury, insurer's untimely disclaimer effective absent insured's showing of prejudice resulting from insurer's unreasonable delay in disclaiming). Thus, where applicable, § 3420(d) eliminates the insured's duty, under New York caselaw, to demonstrate prejudice before allowing an insurer's untimely disclaimer of coverage.

■ Once an insurer specifies the particular grounds upon which it disclaims coverage, the insurer waives its right to subsequently disclaim based on other unspecified grounds, provided the insurer possessed sufficient knowledge of the circumstances regarding the unasserted ground. *AMRO Realty Corp, supra*, at 1432; *General Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 414 N.Y.S.2d 512, 387 N.E.2d 223, 224–25 (1979); *Hartford Ins. Co., supra*, at 1062.

Waiver evolved because of courts' disfavor of forfeitures of the insured's coverage which would otherwise result where an insured breached a policy condition, as for instance, failure to give timely notice of a loss or failure to co-operate with the insured. To defeat the forfeiture, courts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense.

*Albert J. Schiff Associates, supra*, at 87 (citation omitted).

Accordingly, any insurer which advised the Town that it was disclaiming or denying coverage based on a particular ground for disclaimer, yet failed to specify late notice as one of those grounds, has waived its right to assert late notice as a ground for disclaimer or denial of coverage, provided the insurer was in possession of sufficient facts to assert such non-specified ground.

*AMRO Realty Corp., supra.* Further, an insurer's letter reserving the right to assert a disclaimer does not displace the additional requirement timely to disclaim based on the reserved disclaimer grounds. *Allstate Insurance Co. v. Gross,* 27 N.Y.2d 263, 317 N.Y.S.2d 309, 265 N.E.2d 736, 739 (N.Y.1970) (holding untimely disclaimer of coverage based on ground of late notice, issued seven months after insurer's reservation of right to disclaim letter).

■ In New York, an insured's timely notification of a claim or suit does not prevent an insurer from disclaiming its right to deny coverage based on the insured's failure to provide timely notice of the occurrence on which the claim is premised. *See Commercial Union, supra,* at 274 (insurer's reservation of rights letter issued upon being notified by insured of product liability litigation commenced against it in which insurer unambiguously stated its belief that insured had failed to provide timely notification of an occurrence was a legally effective disclaimer of coverage). However, even if an insurer timely disclaims based on a late notification of a claim, but fails to timely disclaim based on a late notice of the occurrence upon which the claim is based, the insurer is held to have waived its late notice disclaimer, thereby extending coverage. *Matter of Firemen's Funds Ins. Co., supra,* at 1355 (where insurer failed timely to disclaim based on late notice of occurrence, insurer's subsequent timely disclaimer upon notification of claim was disallowed).

## 1. *TIG*

A predecessor company to TIG issued eight insurance policies to the Town, providing primary general liability insurance for the period March 30, 1961 though March 30, 1971. TIG Memorandum at 4; TIG Exhibits D–J; Henry Affidavit Exhibit Q. Each of these policies contains the

notice provision requiring notification of an occurrence "as soon as practicable," and of a suit or claim "immediately."

By letter dated January 18, 1996, the Town provided TIG with copies of the complaint and third party complaints with which it had been served in the underlying CERCLA and the *Freier, Batt, Astor* and *Davies* personal injury actions, and for which the Town demanded a defense. Damon & Morey Letter dated January 18, 1996, TIG Exhibit K. It is undisputed that TIG was not previously notified of any occurrence, claim or suit.

On February 27, 1996, TIG advised it was reviewing the Town's claim to determine if coverage was required and

> reserving all of its rights with respect to this claim, including the right to disclaim coverage entirely in the event that this claim is ultimately determined to be outside the scope of the alleged policy coverage.

TIG Letter dated February 27, 1996, TIG Exhibit L.

TIG also requested the Town furnish additional information to permit TIG to determine to what extent it was obligated to defend the Town with regard to the underlying claims. *Id.* In response, on April 1, 1996, the Town furnished TIG with a copy of the first page of the 1986 DEC letter. TIG Reply at 3; *see* TIG Exhibit P.

On May 15, 1996, TIG agreed to participate in defending the Town with regard to the underlying claims, subject to reservations including whether the claim arose outside the period covered by insurance policies issued, the extent of insurance coverage specifically provided for by the relevant policies and certain exceptions. TIG Letter dated May 15, 1996, TIG Exhibt M. TIG further advised that the specified reservations were

not intended, nor shall [ ] be construed as a waiver or relinquishment of any other policy term, condition, exclusion or other defense to coverage that TIG has or may have under the circumstances. *Id.*

On November 13, 1996, TIG requested the Town provide further information regarding the underlying actions. TIG Letter dated November 13, 1996, Town Exhibit H. In response, on December 4, 1996, the Town furnished TIG with a correspondence exchanged between the Town and the DEC including the 1992 DEC letter. Damon & Morey Letter dated December 4, 1996, TIG Exhibit P.[16] On December 6, 1996, the Town provided TIG with a copy of the Third Party Complaint in *Fiels,* with which the Town had been served on November 27, 1996. Town Memorandum at 9.

By letter dated February 19, 1997, TIG advised the Town that its further submissions confirmed the Town had received a demand letter from the DEC on April 2, 1992 and that the earlier documents submitted referenced only the DEC's May 13, 1986 inquiry. TIG Letter dated February 19, 1997, Town Exhibit L. TIG further advised that the Town had failed to give immediate written notice of claims, that the Town was aware of an "occurrence" prior to 1992, yet failed to notify TIG as soon as was practicable. *Id.* Based on

these breaches of the coverage conditions, TIG advised it that did not believe it was obligated to indemnify the Town, although it would continue to defend the Town in the actions. *Id.* Prior to disclaiming coverage, TIG provided the Town with legal defense fees in excess of $200,000 for which TIG now seeks reimbursement. TIG Memorandum at 9. Thereafter, on July 3, 1997, TIG disclaimed coverage to the Town on the basis of late notice of an occurrence by filing the instant action.[17] TIG Memorandum at 9.

■■■ Although in its reservation of rights letter of February 27, 1996, TIG specified that it was reserving its right to disclaim coverage in the event the claims were ultimately determined to be outside the scope of the alleged policy coverage, TIG failed to specify it reserved the right to disclaim based on late notice. TIG Exhibit L. Significantly, TIG possessed sufficient information of an occurrence on which to disclaim based on late notice in April 1996 when it received the 1986 DEC letter. Additionally, TIG had received, prior to issuing its reservation of rights letter, information regarding the underlying personal injury toxic tort claims, but asserted only a reservation of rights as to the scope of coverage under the policies. Such information should have alerted TIG as a reasonable insurer to the existence of an earlier occurrence upon which an effec-

---

16. In it's letter of November 13, 1996, TIG requested the Town provide a copy of the complete 1986 DEC letter, noting that it was previously provided with a copy of only that letter's first page. TIG Letter dated November 13, 1996, Exhibit H to the Town's Notice of Cross–Motion (Docket Item No. 57). In response, the Town furnished TIG with a complete copy of the May 13, 1986 DEC letter and also indicated it had previously provided TIG with a complete copy. Damon & Morey Letter dated December 4, 1996, TIG Exhibit P. Notably, TIG does not assert the Town's failure to provide it with a complete copy of

the 1986 DEC letter prevented it from earlier disclaiming coverage based on late notice.

17. TIG's filing of the instant action seeking declaratory relief regarding its obligations to defend and indemnify the Town on the underlying actions was a proper form of disclaimer. *Prashker v. U.S. Guarantee Co.,* 1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871, 875 (1956) (declaratory judgment action appropriate procedure for insurer to disclaim coverage and deny duty to defend or indemnify insured).

tive late notice disclaimer could have been interposed. TIG therefore waived its right to disclaim based on the Town's late notice of an occurrence and claim with regard to the underlying CERCLA and personal injury actions. *AMRO Realty Corp, supra,* at 1432; *General Accident Ins. Group, supra,* at 224–25; *Hartford Ins. Co. supra,* at 1062.

As TIG has waived its late notice ground for potential disclaimer by failing to reserve or timely assert it, and as TIG has no other basis for disclaiming or denying coverage, TIG is obligated to tender the Town a defense to the underlying actions. Further, there is no basis on which the Town is required to reimburse TIG for legal defense fees already expended in defending the Town with regard to the underlying actions and provide indemnification. Alternatively, as the matter is before the court for a report and recommendation, should the District Judge disagree with the finding that TIG waived its late notice disclaimer ground by failing to specifically assert it, the court considers whether, with regard to the personal injury actions, TIG's notice of disclaimer of coverage was untimely under N.Y. Insurance Law § 3420(d), and whether, as to the CERCLA action, TIG is estopped from disclaiming based on late notice.

Under N.Y. Ins. Law § 3420(d), an insurer is required to disclaim or deny coverage for death or bodily injury claims "as soon as is reasonably possible." As discussed, *supra,* the Town has conceded that the 1986 DEC letter was an occurrence which triggered its duty to notify its insurers. TIG, however, argues that the event triggering its duty to promptly disclaim or deny coverage based on late notice was not its receipt in April 1996 of the 1986 DEC letter, but, instead, its receipt on December 4, 1996, of the 1992 DEC letter advising the Town of its status as a PRP with

regard to the cleanup of the Landfill. TIG Reply at 5.

TIG's argument that its duty to disclaim accrued upon its receipt in December 1996 of the 1992 DEC letter which first identified the Town as a PRP with respect to the Landfill is inconsistent with this court's prior findings in *F.N. Burt, supra,* and *Trico, supra.* In *F.N. Burt, supra,* it was recommended with regard to an insurer seeking declaratory relief that it was not obligated to defend or indemnify an insured who allegedly deposited hazardous waste into several landfills that, if the District Judge disagreed with the court's primary finding that the pollution exclusion contained in the relevant policy precluded coverage, summary judgment should nevertheless be denied on the alternative basis of untimely notification. In *Trico, supra,* the court denied partial summary judgment to an insured who sought declaratory relief that its insurers were required to provide a defense and indemnification with regard to remediation at the Landfill where the insured had deposited hazardous waste, based on untimely notice. At issue in both those cases was whether a letter prepared by the DEC in 1985 ("the 1985 DEC letters"), essentially identical to the 1986 DEC letter here, advising that the insureds had been identified as generators of hazardous waste deposited at the Landfill, reasonably suggested the possibility of a potentially covered claim sufficient to constitute a reportable occurrence under the relevant insurance policies. *F.N. Burt, supra,* at 20–21; *Trico, supra,* at 22–25. TIG attempts to distinguish those cases from the instant case on the basis that the Town has failed to demonstrate that TIG was aware of those prior rulings and thus should have applied them by asserting a disclaimer based on the Town's failure to advise TIG of the 1986 DEC letter in connection with processing

the Town's submissions of the Landfill related lawsuits. TIG Reply at 6–7.

The court has reviewed the *F.N. Burt* and *Trico* decisions and finds they are applicable to the instant motions. Specifically, the critical finding in the cases was that in a CERCLA or toxic tort case based on disposal of hazardous wastes, an insured's duty to notify an insurer of an occurrence is not solely triggered upon receipt of a formal PRP letter, or a summons and complaint, but accrues upon knowledge of facts sufficient to alert the insured to a reasonable possibility of the existence of a potentially covered claim. *F.N. Burt, supra,* at 20–22 (citing *Ogden Corp., supra.,* at 43); *Trico, supra,* at *22–25 (same). TIG does not explain how its alleged lack of unawareness of *F.N. Burt* and *Trico* place TIG in any different position than the insurer in *F.N. Burt* and the insured in *Trico* which failed to act upon the similar 1985 DEC letters that sufficiently alerted them to the possibility of a potentially covered claim as to trigger their duty to notify, as in *Trico,* and to disclaim based on late notice, as in *F.N. Burt.* The court notes, for example, that Maryland Casualty immediately disclaimed based on the Town's failure earlier to provide notice of the 1986 DEC letter. Town Exhibit V. Moreover, upon receipt in April 1996 of the 1986 DEC letter, referring to the Landfill as an inactive hazardous waste site listed on the state registry for such sites, TIG was actually in a better position to consider such letter was an occurrence within the meaning of § 3420(d) as, unlike the insurer in *F.N. Burt,* TIG was also in possession of copies of the underlying complaints on which the Town sought coverage under TIG's insurance policies. Notably,

the Town provided the 1986 DEC letter to TIG in response to TIG's request, made on February 27, 1996, for additional information regarding the underlying claims to enable TIG to determine whether to deny or accept coverage.

In this case, the court finds that the 1986 DEC letter advising the Town that it had been identified as a generator and transporter of waste to the Landfill which had been designated an inactive hazardous waste site, was sufficient to suggest to a reasonable person the possibility of a potentially covered claim, triggering the Town's duty to notify its insurers. *Commercial Union, supra,* at 272; *Utica Mutual, supra,* at 122. Significantly, TIG's argument to the contrary is inconsistent with its earlier assertion that the Town's duty to notify its insurers of an occurrence accrued upon the Town's receipt of the 1986 DEC letter. *See* TIG Memorandum at 14. It follows that TIG's duty to disclaim coverage based on late notice accrued upon its receipt of the 1986 DEC letter from the Town on April 1, 1996, rather than receipt of the 1992 DEC letter in December 1996.[18] *Ogden Corp., supra,* at 43, and was not renewed upon receipt of notice of the subsequently filed CERCLA and personal injury actions. *Matter of Firemen's Fund, supra,* at 1355. TIG failed to disclaim until February 19, 1997, ten months later, and, as such, must, in accordance with applicable New York law, be found to have waived its right to disclaim based on untimely notification with respect to the underlying personal injury actions. *Taradena v. Nationwide Mutual Ins. Co.,* 239 A.D.2d 876, 659 N.Y.S.2d 646, 648 (App. Div. 4th Dep't 1997) (holding

---

**18.** Although the record indicates that TIG was only provided with the first page of the 1986 DEC letter on April 1, 1996, TIG has not asserted that the failure to provide it with a complete copy in any way affected its ability to determine whether it had a potential ground on which to disclaim coverage based on untimely delay. Additionally, the record also indicates that TIG was subsequently provided with a complete copy.

unjustified delay of ten months in providing notice of disclaimer to insured was untimely as matter of law).

As the underlying CERCLA action, however, does not involve death or bodily injury, § 3420(d) does not apply, and TIG's untimely disclaimer may be given effect unless the Town demonstrates prejudice based on unreasonable delay in disclaiming. *Pleasantville, supra,* at 443. The Town maintains that inasmuch as TIG has already undertaken a defense, TIG is estopped from disclaiming, even though TIG is not obligated to defend. Town Memorandum at 19 citing *Albert J. Schiff Associates, supra,* at 87.

The Town's reliance on *Albert J. Schiff Associates,* is misplaced. In that case the court held estoppel will apply where, although not obligated under the policy to provide coverage because the requested coverage is outside the scope of the policy or specifically exempted under an exclusion provision, the insurer, without asserting or reserving such disclaimer ground, undertakes the defense on which the insured, upon a mistaken but reasonable belief the insurer will provide a defense, relies, causing the insured to suffer the loss of the right to control its own defense. *Albert J. Schiff Associates, supra,* at 87. In the instant case, TIG has not provided a defense which it is not otherwise obligated to provide under the policy, a fact evidenced by TIG's seeking summary judgment only on the ground of late notice rather than on an exclusion provision. Moreover, even if *Albert J. Schiff Associates* was on point, the Town has not asserted, as is its burden, that it has lost the right to control its own defense. *See* Town Memorandum at 19. Nor does the Town dispute TIG's contention that "[t]hroughout this action the Town was represented by its own counsel of choosing. It was this counsel, not TIG, that controlled the de-

fense and thus the Town maintained complete control over its own defense." TIG Memorandum as 8. Accordingly, should the District Judge find that TIG has not waived its late notice disclaimer ground with regard to the CERCLA action then, under these circumstances, TIG should not be estopped from discontinuing its defense of the Town.

Accordingly, the court must consider whether TIG is entitled to reimbursement of the defense fees incurred between May 1996 and the commencement of the instant action under a theory of unjust enrichment. Under New York law, in an action for unjust enrichment, "[g]enerally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount Film. Distrib. Corp. v. State,* 30 N.Y.2d 415, 334 N.Y.S.2d 388, 285 N.E.2d 695, 698 (1972) (citing Restatement, Restitution, §§ 1, 142, esp. Comment B; *id.,* § 155, including Comment B). "[T]he essential inquiry 'is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *Geller v. County Line Auto Sales,* 86 F.3d 18, 22 (2d Cir.1996) (quoting *Paramount Film Distrib, supra,* at 700 (citations omitted)).

The parties do not dispute that TIG paid the costs incurred by the Town with respect to the underlying actions until TIG commenced the instant action, and that the Town continues to retain the benefit of such payments. TIG maintains that it mistakenly undertook the defense and that such mistake resulted from the Town's misconduct and misrepresentation in concealing, initially, the 1992 DEC letter in which the Town was first named as a PRP with respect to the Landfill. TIG Memo-

randum at 19. According to TIG, had it received the 1992 DEC letter earlier, it would have refused, based on late notice of the occurrence, to provide any defense and urges the court to find that the Town cannot, in good conscience, continue to retain the benefit of defense expenditures provided by TIG. *Id.*

The court's finding with regard to the underlying personal injury actions that the 1986 DEC letter, with which TIG was provided in April 1996, rather than the 1992 DEC letter that triggered TIG's duty to disclaim based on late notice applies here. As such, TIG's receipt in April 1996 of the 1986 DEC letter accrued its duty to disclaim based on late notice although it failed to do so for 10 months. Thus, the Town cannot be found to have retained the benefit of the defense expenditures provided by TIG upon misconduct. TIG's request for reimbursement of the subject defense fees based on unjust enrichment should, therefore, be DENIED.

To summarize, TIG's motion for summary judgment with respect to all the underlying claims should be DENIED on the basis that it waived its right to disclaim or deny coverage based on untimely notice. Alternatively, TIG's motion should be DENIED with respect to the personal injury actions for noncompliance with N.Y. Ins. Law § 3420(d), and GRANTED with respect to the CERCLA action as the Town has failed to assert it was prejudiced by the delay including grounds for estoppel. However, TIG's request for reimbursement of defense fees expended under an unjust enrichment theory should be DENIED.

### 2. *Century*

The primary insurance policy issued the Town by Century for the period April 1, 1981 to April 1, 1982, contains a notice provision requiring written notice of an occurrence "as soon as practicable," or of a claim or suit "immediately." Century Memorandum at 4–5; Century Exhibit J. On February 1, 1996, the Town advised Century that it had been sued as a third party defendant in the *Freier, Batt, Astor* and *Davies* personal injury actions and as a defendant in the CERCLA action, and demanded a defense as to those actions. Damon & Morey Letter dated February 1, 1996, Century Exhibit I. It is undisputed that Century was not previously notified of any occurrence, claim or suit. Century responded on February 22, 1996, advising the Town that it was unable to locate the relevant insurance policies and, as such, it was unable at that time to accept or deny coverage with regard to the claims, and was reserving all rights under the alleged policies. Town Exhibit M. Century also requested the Town furnish additional information to assist Century in investigating its obligations to the Town with regard to the claims. *Id.*

On April 24, 1996, the Town provided Century with the requested information, including a copy of the 1986 DEC letter. Town Memorandum at 12. On August 22, 1996 and October 24, 1996, the Town requested Century advise whether it intended to defend and indemnify the Town with respect to the underlying actions. Town Exhibits O and P. By letter dated February 5, 1997, Century advised the Town that it was disclaiming coverage under the insurance policy based on the pollution exclusion and the Town's failure to comply with the notice requirement. Town Exhibit Q.

Because Century did not, in its reservation of rights letter issued on February 22, 1996, specify any particular potential disclaimer ground, Century did not waive its right to disclaim based on the Town's untimely notification of an occurrence. *AMRO Realty Corp., supra,* at 1432; *Gen-*

eral Accident Ins. Group, supra, at 224–25; Hartford Ins. Co., supra, at 1062. However, Century, like TIG, upon receiving the 1986 DEC letter on April 24, 1996, did not timely advise the Town that it was disclaiming coverage based on the Town's failure to notify Century of the 1986 occurrence as soon as practicable. Instead, Century delayed more than nine months before disclaiming on February 5, 1997. Town Exhibit Q. Under § 3420(d), such delay constitutes a waiver of the insurer's right to disclaim coverage based on the insured's failure to give timely notice only as to the personal injury actions. Matter of Firemen's Fund, supra, at 1355 (holding insurer's communication of intent to disclaim nearly eight months after insurer first received notice of personal injury accident was untimely). However, as the underlying CERCLA action does not involve death or bodily injury, § 3420(d) is inapplicable to the CERCLA action claim. Because the Town has not demonstrated prejudice caused by the delayed disclaimer, Century's untimely disclaimer based on late notice should be given effect as to the CERCLA action. Pleasantville, supra, at 443. Accordingly, Century's disclaimer of coverage based on late notification was untimely as to the personal injury actions, but not as to the CERCLA action.

### 3. Travelers

The Town seeks coverage from Travelers under an insurance policy issued by Aetna ("Aetna policy"), and by Travelers ("Travelers policy").[19] Specifically, Aetna issued "multi-peril" insurance policy No. 15 SM 801882 FCA, to the Town covering the period March 30, 1977 to March 30, 1980. Travelers Exhibit 10. That policy contained notice provisions requiring notification of any accident or occurrence "as soon as practicable" and of a claim or suit "immediately." Travelers Memorandum at 5; Town Memorandum at 10; Travelers Exhibit 10.[20] Travelers also issued the Town indemnity insurance policy No. KDS 2582129, for the period March 22, 1966 to March 22, 1967. Town Memorandum at 9; Travelers Exhibit 11. The policy includes a notice provision requiring the Town notify it of any accident "as soon as practicable." Town Memorandum at 10, Travelers Exhibit 11.

By letter dated January 18, 1996, the Town notified Travelers of the CERCLA and Freier, Batt, Astor and Davies personal injury actions filed against it, requesting defense and indemnification in accordance with the Aetna policies. Travelers Memorandum at 12; Travelers Exhibit 68. On January 26, 1996, Travelers informed the Town that it was investigating its obligations under the policies to defend and indemnify, requested further information, advised that such request did not constitute a waiver of any rights or grounds for disclaiming coverage available, and that Travelers would "expand upon this reservation of rights as our investigation progresses." Travelers Memorandum at 13;

---

**19.** Initially, Travelers was unable to locate, and the Town was unable to produce copies of, the Aetna and Travelers policies under which the Town seeks defense and indemnification with regard to the underlying actions. Copies of these policies have since been located. Travelers Exhibits 10 and 11.

**20.** It is alleged in the Third Party Complaint that between March 30, 1977 and March 30, 1981, Aetna issued the Town two primary general liability policies, Nos. 15 SM 801882

FCA and 15 SM 68439 FCA. Third Party Complaint, ¶ 25; Kerr Affidavit, ¶ 9. Travelers has been unable to locate any Aetna policies issued to the Town and the Town has provided a copy of only policy No. 15 SM 801882 FCA, which Travelers maintains is incomplete. Kerr Affidavit, ¶ 9 & n. 5. Regardless of whether that copy is complete, its stated effective dates are March 30, 1977 to March 30, 1980. Travelers Exhibit 10.

Travelers Exhibit 69. The Town's response, dated April 24, 1996, did not include copies of the relevant policies, but did include the 1986 DEC letter.

By letter dated March 7, 1996, the Town advised Travelers that it had been sued in the underlying CERCLA and *Freier, Batt, Astor* and *Davies* personal injury actions and requested defense and indemnification in accordance with the Travelers' policy. Travelers Memorandum at 15; Travelers Exhibit 71. Travelers responded by letter of April 1, 1996, that it would investigate whether it was obligated to defend or indemnify the Town with respect to the underlying actions, stated Travelers was, nevertheless, fully reserving all rights and grounds to disclaim coverage, and requested the Town provide additional information. Travelers Memorandum at 15–16; Travelers Exhibit 72. In a letter to the Town dated June 7, 1996, Travelers reiterated it was unable to locate a copy of any insurance policies issued to the Town, stated based on the partial copy provided by the Town, it appeared the policy was intended to provide coverage limited to liabilities arising out of operations performed by independent contractors, and therefore requested information concerning the Town's transportation of waste to the Landfill. Travelers Memorandum at 16; Travelers Exhibit 73.

The Town responded to Travelers in a letter dated August 6, 1996, asserting that the Town utilized the Landfill to dispose of residential solid wastes and fly ash from Town incinerators, from 1933 until 1962, and that the Town was not involved in the disposition of residential solid waste at the Landfill but, rather, paid to dispose of such waste pursuant to a contract with the Landfill operators, approved by Town resolution dated March 15, 1948. Travelers Memorandum at 16–17; Travelers Exhibit 74. The Town further indicated it was obtaining information as to how residential solid waste was transported to the Landfill, although, according to the Town, preliminary indications pointed to third party contractors and the Town Sanitation Department. Travelers Exhibit 74. The Town never provided Travelers with a copy of the 1992 DEC letter. Travelers Memorandum at 17.

On June 20, 1997, Travelers declined coverage under the Aetna policies based on the pollution exclusion, and, as to the Travelers policy, based on the Town's failure to document that any independent contractor had been used to transport the waste. Travelers Memorandum at 17; Travelers Exhibit 76. Travelers further specifically reserved the right to assert breaches of conditions of the policies, including notice provisions. (Travelers Memorandum at 17–18; Travelers Exhibit 76). Notwithstanding these reservations, Travelers, as a condition to settlement of the Town's threatened claim of a breach of duty to defend, subsequently agreed to participate in the Town's defense in the underlying actions.

Under these circumstances, Travelers' reservation of all of its rights to disclaim letter did not waive its right to disclaim coverage under the Aetna and Travelers policies based on a failure to particularize which rights were reserved. Additionally, as late as June 20, 1997, Travelers continued to assert that it was reserving its right to disclaim based on untimely notification. Travelers Exhibit 76. Nevertheless, as of June 20, 1997, Travelers had been in possession of the 1986 DEC letter for more than one year and, therefore, had sufficient facts on which to disclaim based on untimely notification of the 1986 occurrence. *Matter of Firemen's Fund, supra,* at 1355 (eight month delay precluded disclaimer). Accordingly, Travelers has waived its right to disclaim coverage of the

personal injury actions based on untimely notification of the occurrence. As the underlying CERCLA action, however, does not involve death or bodily injury, § 3420(d) does not apply and, as the Town has failed to demonstrate any prejudice resulting from on unreasonable delay, Travelers' untimely disclaimer should be given effect regarding the CERCLA actions. *Pleasantville, supra,* at 443.

### 4. *Maryland Casualty*

Maryland Casualty issued the Town a primary insurance policy effective March 30, 1982 through March 30, 1984.[21] Maryland Casualty Memorandum at 2; Maryland Casualty Exhibit 3; Town Exhibit R. That policy contains a notice provision requiring notification by the Town "as soon as practicable" with regard to any occurrence, and "immediately" with regard to a claim or suit. Maryland Casualty Memorandum at 3; Maryland Casualty Exhibit 3.

On August 29, 1996, the Town notified Maryland Casualty of the underlying *Freier, Batt, Astor* and *Davies* personal injury and CERCLA actions. Maryland Casualty Memorandum at 7; Town Exhibit S. By letter dated September 5, 1996, Maryland Casualty advised the Town that it was searching its records for a copy of the policy issued to the Town and requested the Town provide it with a copy. Maryland Casualty Letter dated September 5, 1996, Town Exhibit T. Maryland Casualty further advised it was reserving all rights

and disclaimer grounds with regard to the claims and requested additional information to assist in determining its obligations to the Town under the policy. *Id.* On September 17, 1996, the Town provided the requested information, including the 1986 DEC letter. Damon & Morey Letter dated September 17, 1996; Town Exhibit U; Town Memorandum at 24. On September 25, 1996, Maryland Casualty advised the Town that, based on the pollution exclusion and timely notice requirement, it was disclaiming coverage for the four personal injury actions filed as of that date, *i.e., Freier, Batt, Astor* and *Davies,* and also the CERCLA action. Maryland Casualty Letter dated September 25, 1996, Town Exhibit V.

On December 6, 1996, the Town forwarded a copy of the third party complaint filed in the *Fiels* action and received by the Town on November 27, 1996, to Maryland Casualty, requesting defense and indemnification. Maryland Casualty Reply at 3. Maryland Casualty advised the Town on December 17, 1996 that additional information was needed before determining whether the relevant insurance policy provided the defense and indemnification coverage and requested the Town forward the underlying third party complaint. *Id.;* Maryland Casualty Exhibit A.[22] When the Town did not respond, Maryland Casualty submitted a second request for the *Fiels* third party complaint on March 6, 1997. Maryland Casualty Reply at 3; Maryland

---

**21.** Although Maryland Casualty states the relevant policy was for the period March 30, 1982 through March 30, 1983, Maryland Casualty Memorandum at 2, the Town maintains that Maryland Casualty's insurance policy covered the period March 30, 1982 through March 30, 1984. Third Party Complaint, ¶ 29; Town Memorandum at 13. Further, a copy of policy No. CB 47802064 submitted by the Town indicates the policy's effective dates as March 30, 1982 through March 30, 1984.

Town Exhibit R. As Maryland Casualty neither disputes that Town Exhibit R is an accurate copy of policy No. CB 47802064 nor attempted to explain this discrepancy, the court considers the discrepancy a typographical error.

**22.** Lettered exhibits submitted by Maryland Casualty in support of summary judgment are attached to Maryland Casualty Reply.

Casualty Exhibit B. On March 18, 1997, the Town provided Maryland Casualty with a copy of the third party complaint. Maryland Casualty Reply at 3–4; Maryland Casualty Exhibit C. Upon reviewing that complaint, Maryland Casualty disclaimed coverage on March 25, 1997, based on the pollution exclusion. Maryland Casualty Reply at 4; Town Exhibit X. On June 12, 1997, the Town notified Maryland Casualty of the third party complaint filed in *Anthony*. Town Memorandum at 14; Town Exhibit Y. Maryland Casualty disclaimed coverage with respect to *Anthony* based on the pollution exclusion on June 25, 1996. Town Memorandum at 14; Town Exhibit Z.

As Maryland Casualty did not specify any particular grounds for disclaiming in its September 5, 1996, reservation of rights letter with regard to the CERCLA actions and the *Freier, Batt, Astor* and *Davies* personal injury actions, Town Exhibit T, Maryland Casualty did not waive any unasserted ground for disclaimer including untimely notice as to those actions. *Allstate Insurance, supra,* at 739. The Town concedes that Maryland Casualty timely disclaimed with regard to the CERLCA action and all the personal injury actions with the exception of *Fiels* and *Anthony,* for which no disclaimer based on untimely notice was asserted. Town Memorandum at 24.

These facts demonstrate that Maryland Casualty timely disclaimed coverage with respect to the CERCLA and *Freier, Batt, Astor* and *Davies* personal injury actions on September 25, 1996, eight days after the Town submitted a copy of the relevant insurance policies. However, Maryland Casualty's disclaimers of coverage within seven days of receipt of a copy of the Third Party Complaint filed in *Fiels* and within 13 days of receipt of a copy of the Third Pary Complaint filed in *Anthony,*

were based solely on the pollution exclusion, thereby waiving the right to disclaim predicated on untimely notice as to the personal injury actions. *AMRO Realty Corp, supra,* at 1432; *General Accident Ins. Group, supra,* at 224–25; *Hartford Ins. Co. supra,* at 1062.

Maryland Casualty thus timely disclaimed coverage with respect to all the actions under the pollution exclusion and on untimely notice as to the CERCLA, *Freier, Batt, Astor* and *Davies* actions. However, Maryland Casualty failed to timely disclaim on the ground of untimely notice in the *Fiels* and *Anthony* personal injury actions to which N.Y. Ins. Law § 3420(d) applies and, as to those two actions, has waived that ground.

### 5. *USF & G*

USF & G issued the Town a comprehensive general liability insurance policy effective March 30, 1984 through March 30, 1985, and which was subsequently renewed for the period March 30, 1985 through March 30, 1986. USF & G Memorandum at 4; USF & G Exhibits F and G. The policies also contain notice provisions requiring notification by the Town of any occurrence "as soon as practicable" or of a claim or suit "immediately." *Id.*

The Town notified USF & G of the underlying actions by letter dated August 29, 1996. USF & G Memorandum at 13; Town Memorandum at 14; USF & G Exhibit A. In its response, dated September 16, 1996, USF & G advised the Town that it had been unable to locate the referenced policies although a records search was ongoing, and requested the Town provide copies of the policies. USF & G Letter dated September 16, 1996, USF & G Exhibit B. USF & G further advised that it was without sufficient facts to determine whether it was required to defend or indemnify the Town as to the underlying

actions and that it was not waiving any rights or conditions under the policies. *Id.* On June 12, 1997, the Town advised USF & G that on May 22, 1997, it had been served with a third party complaint in the *Anthony* action. USF & G Exhibit C. In response, USF & G advised the Town on July 30, 1997, it was unable to locate the relevant insurance policies although a search was in progress, requested the Town submit copies of the policies, and stated that USF & G was not waiving any rights or conditions under the policies. USF & G Exhibit D.

On August 25, 1997, the Town informed USF & G it had not yet located the insurance policies and would notify USF & G when a copy was located. USF & G Memorandum at 14–15; USF & G Exhibit E. On March 3, 1998, USF & G again advised the Town that it was unable to locate the relevant insurance policies and requested the Town provide copies of them. Letter dated March 3, 1998, Exhibit B to Affidavit of Patrick M. Tomovic, Esq. ("Tomovic Affidavit"), attached to USF & G's Notice of Motion (Docket Item No. 53). As the policies had not been located, on March 3, 1998, USF & G and the Town stipulated to extend to April 1, 1998, the period for USF & G to answer the Third Party Complaint to April 1, 1998. *Id.;* Rallis Affidavit, ¶ 8; Stipulation and Order filed March 31 1998 (Docket Item No. 25). Subsequently, USF & G located the insurance policies and provided copies to the Town. Rallis Affidavit, ¶ 8.

USF & G has not tendered a defense to any of the underlying actions. Town Memorandum at 15. The Town contends that USF & G first disclaimed coverage when it answered the Third Party Complaint, served on May 1, 1998. Town Memorandum at 15. Other than the insurance policies under which coverage is sought, the record does not indicate that USF & G ever requested the Town provide any additional information, such as the 1986 DEC letter, that the Town ever provided such information of its own initiative, or that USF & G ever received a copy of the 1986 DEC letter.

USF & G maintains it was unable to disclaim coverage earlier because it could not locate the relevant insurance policies. USF & G Memorandum at 4–6. The Town asserts that USF & G's ultimate production of the policies renders USF & G's claim that it was unable to locate them earlier less than credible. Town Memorandum at 24–25. Regardless of whether USF & G should have earlier located the relevant policies, the obligation to produce proof of coverage under New York law is on the insured. *De Paolo v. Leatherstocking Cooperative Insurance Co.,* 256 A.D.2d 879, 681 N.Y.S.2d 686, 687 (App. Div.3d Dep't 1998) (citing cases); *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York,* 241 A.D.2d 66, 671 N.Y.S.2d 66, 70 (App. Div. 1st Dep't 1998). An insurer's obligation to disclaim does not accrue until proof of the existence of coverage not otherwise available has been established by the insured. *State Farm Mutual Ins. Co. v. Vazquez,* 249 A.D.2d 312, 670 N.Y.S.2d 901, 902 (App. Div.2d Dep't 1998). Accordingly, USF & G cannot be held to have failed to disclaim earlier when the Town was unable to produce the asserted insurance policies upon which coverage depended.

The facts demonstrate that once the insurance policies were located, thereby enabling USF & G to determine its obligations to the Town under the policies, USF & G timely disclaimed. Specifically, as of March 31, 1998, the policies had yet to be located. The policies were thereafter located and, on May 1, 1998, USF & G first disclaimed coverage upon the pollu-

tion exclusion and the Town's breach of the timely notification condition.

The court finds this delay of one month from the time the insurance policies were located insufficient to waive the right to disclaim. *Silk v. City of New York*, 203 A.D.2d 103, 610 N.Y.S.2d 36, 37 (App. Div. 1st Dep't 1994) (holding insurer's one month delay in disclaiming coverage was not unreasonable under N.Y. Ins. Law § 3420(d)). Accordingly, USF & G did not waive its right to disclaim based on the pollution exclusion or untimely notification as to any underlying action.

## CONCLUSION

Based on the foregoing, TIG's motion (Docket item No. 50) should, upon the ground of late notice, be DENIED as that ground was waived or, alternatively, based on untimely notice, DENIED as to the personal injury actions, but GRANTED as to the CERCLA action; in either event, TIG's request for reimbursement of legal fees advanced should be DENIED. Century's motion (Docket Item No. 16) should, based on the pollution exclusion, be GRANTED or, alternatively, based on untimely notice, DENIED as to the personal injury actions and GRANTED as to the CERCLA action. Maryland Casualty's motion (Docket Item No. 46) should, based on the pollution exclusion, be GRANTED or, alternatively, based on untimely notice as to the CERCLA, *Freier*, *Batt*, *Astor* and *Davies* actions, GRANTED, and DENIED as to the *Fiels* and *Anthony* actions. Travelers' motion (Docket Item No. 48) should, based on the pollution exclusion and independent contractors clause, be GRANTED or, alternatively, based on untimely notice, DENIED as to the personal injury actions and GRANTED as to the CERCLA action. USF & G's motion (Docket Item No. 53), should, under the pollution exclusion, be GRANTED or, al-

ternatively, based on untimely notice, GRANTED as to all underlying actions. Town of Cheektowaga's cross-motion (Docket Item No. 57), should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.