131 F.3d 95
 THRIFT DRUG, INC., a Pennsylvania Corporation, Plaintiff-Appellee,
v.
UNIVERSAL PRESCRIPTION ADMINISTRATORS and Alvin S.
Konigsberg, Defendants-Appellants,
Prescription Plan Service Corporation, a New York
Corporation, Defendant.
 No. 527, Docket 97-7414.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 29, 1997.
Decided Dec. 11, 1997.
 
 Steven Kern, Roy Barnes, P.C., Elmsford, New York, for Defendants-Appellants.
 R. Damien Schorr, Pittsburgh, Pennsylvania, for Plaintiff-Appellee.
 Before: FEINBERG, KEARSE and WALKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants-appellants Universal Prescription Administrators ("UPA") and UPA's sole director and stockholder Alvin S. Konigsberg ("Konigsberg") appeal from the amended judgment of the United States District Court for the Southern District of New York (Whitman Knapp, District Judge ) after a bench trial (1) granting summary judgment to plaintiff-appellee Thrift Drug, Inc. ("Thrift") holding UPA liable to Thrift in the amount of $59,472.34 with interest, and (2) ruling that Thrift could pierce UPA's corporate veil to reach Konigsberg's personal assets. See Thrift Drug v. Prescription Plan Serv. Corp., 890 F.Supp. 319 (S.D.N.Y.1995).
 
 
 2
 Appellants make three claims: first, that New York law did not permit the district court to pierce UPA's corporate veil and reach Konigsberg's personal assets to satisfy the judgment against UPA; second, that the district court made certain errors in calculating the amount of UPA's liability; and third, that the district court lacked subject matter jurisdiction because Thrift's claim is preempted by the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA") and Thrift lacks standing to sue under ERISA. We vacate and remand the first claim to the district court for further proceedings and reject appellants' second and third claims.
 
 Background
 
 3
 This is a breach of contract case involving prescription plan services. UPA administered prescription benefit plans and, as part of that administration, entered into agreements with "panel pharmacies" such as Thrift. Under an implied contract between UPA and Thrift from 1981-1992, eligible beneficiaries would have their prescriptions filled at Thrift and Thrift would accept from the beneficiary only a co-payment. Thrift would then submit a prescription claim to UPA to be reimbursed. A Panel Pharmacy Agreement, Pharmacy Manual and various written notices from UPA to Thrift governed their implied contract.
 
 
 4
 From 1980 to June 1991, UPA received Thrift's services without objection and regularly reimbursed Thrift for such services. However, as a result of severe cash flow problems, UPA failed to reimburse Thrift for a number of prescriptions dispensed by Thrift between June 1991 and April 1992. On April 11, 1992, Thrift terminated its services to UPA, claiming that UPA failed to reimburse it for dispensed prescriptions. Thrift then filed suit against appellants, and on July 10, 1995 the district court granted Thrift's motion for summary judgment finding UPA liable for failing to reimburse Thrift for services rendered under their implied contract. See Thrift Drug, 890 F.Supp. at 320. Appellants do not challenge this determination of UPA's liability.
 
 
 5
 On May 22, 1996, the district court granted Thrift's supplemental summary judgment motion, determining that UPA was liable to Thrift in the amount of $59,472.34 plus prejudgment interest. See Thrift Drug v. Prescription Plan Serv. Corp., 1996 WL 274045 (S.D.N.Y. May 22, 1996).* After a bench trial on October 15, 1996, the district court ordered that under New York law Thrift could pierce UPA's corporate veil to recover its judgment from the assets of Konigsberg.
 
 Discussion
 I. Piercing the Corporate Veil
 
 6
 We review the district court's conclusions of law de novo and its findings of fact under a clearly erroneous standard. See In Re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir.1990). Because this case arises under federal diversity jurisdiction, this court applies the substantive law of the forum state on outcome determinative issues. See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994).
 
 
 7
 In determining that Thrift could pierce UPA's corporate veil and recover damages from Konigsberg, the district court stated that "where the corporation in fact is run by one person regardless of any corporate form, that person has to be responsible for whatever debt the corporations [sic] have." In so holding, the district court plainly felt constrained to follow our decision of Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir.1993). In Carte Blanche, we held that New York law permits plaintiffs to pierce the corporate veil either "to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." Id. (emphasis added). Since the district court's decision, we have interpreted Carte Blanche to require, in order to pierce the corporate veil, "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir.1997)(emphasis added); see Freeman v. Complex Computing Co., 119 F.3d 1044, 1052-1053 (2d Cir.1997). This test comports with the law of corporate veil piercing as stated most recently by the New York Court of Appeals. See Morris v. New York State Dep't of Taxation and Finance, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157, 1160-61 (1993)("While complete domination of the corporation is the key to piercing the corporate veil ... such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene.") (citations omitted). We find therefore that the district court erred in failing to apply the American Fuel /Freeman /Morris test.
 
 
 8
 The first part of the American Fuel /Freeman /Morris test requires the defendant to have exercised complete domination over the corporation, a finding already made by the district court. Under the Freeman test for complete domination, the evidence presented at trial was sufficient to support the district court's finding that Konigsberg exercised complete domination over UPA. See Freeman, 119 F.3d at 1053. UPA never held formal shareholders' meetings and maintained no records of directors' meetings; Konigsberg was the sole shareholder and director of UPA and could locate no records of stock issued by UPA to him; UPA was inadequately capitalized; UPA issued over $700,000 in loans to Konigsberg without any identified corporate purpose, loans which Konigsberg used in part to support his daughter and to pay his mistress's gambling debts; and UPA loaned over five million dollars to other Konigsberg-owned corporations.
 
 
 9
 The district court, however, made no findings as to the second element required by the American Fuel /Freeman /Morris test, whether Konigsberg's domination of UPA was used to commit a fraud or wrong against Thrift which resulted in Thrift's injury. To determine whether Thrift may pierce UPA's corporate veil under New York law, we must remand to the district court the question of whether this second requirement was met.
 
 II. Amount of UPA's Liability
 
 10
 Appellants contest the district court's determination of UPA's liability, claiming that there exists a genuine issue of material fact as to whether Thrift timely submitted certain claims to UPA, an alleged requirement for Thrift's receiving reimbursements for those claims. We disagree. Thrift submitted affidavits of its Accounts Receivable Collections Manager and Clerk in support of the summary judgment motion, asserting that all of Thrift's unreimbursed claims forming the basis of the district court's judgment "were originally submitted to UPA on a timely basis (within 30 days) of the prescriptions being filled." While Thrift's own Claims Billing Detail Reports do list a small percentage of the claims with billing dates over thirty days after dispense dates, see, e.g., Joint Appendix at 69, list # 37, this minor inconsistency is reasonably explained by Thrift's practice of updating billing dates for corrected claims that UPA had originally rejected. Because appellants have introduced no evidence to suggest otherwise and indeed have presented no evidence at all to support their contention that Thrift's claims were untimely, the award of summary judgment was proper. See, e.g., Catlin v. Sobol, 93 F.3d 1112, 1116 (2d Cir.1996)(summary judgment appropriate in absence of genuine issue of material fact).
 
 
 11
 We also reject appellants' claim that Thrift should not recover $3,456.07 of its $59,472.34 award because Thrift now possesses only computer-generated claim forms and not its original prescription forms for those claims. Whether or not Thrift now has the original prescription forms submitted to UPA for reimbursement, Thrift submitted an uncontested affidavit stating that, as with Thrift's other claims, UPA failed to pay for the $3,456.07 owed to Thrift upon Thrift's submission of the original claim forms.
 
 III. ERISA Preemption
 
 12
 Finally, we reject appellants' contention that ERISA preempts Thrift's claim. As stated recently by this court, the basic purpose of ERISA preemption is " 'to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.' " Burgio and Campofelice, Inc. v. New York State Dep't of Labor, 107 F.3d 1000, 1008 (2d Cir.1997)(quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995)).
 
 
 13
 Because Thrift dispensed prescriptions to beneficiaries of UPA-administered benefit plans, UPA attempts to characterize Thrift's cause of action as a "claim for benefits under ERISA benefit plans, on behalf of the participants and beneficiaries in the welfare benefit plans." Thrift, however, plainly does not represent any participants or beneficiaries of UPA's benefit plan. In this simple contract cause of action, Thrift represents only itself in seeking reimbursement from UPA for the prescriptions Thrift dispensed. Thrift's contract claim has no effect on employee benefit structures or their administration and does not interfere with the calculation of any benefits owed to any employee. In short it relates only to the contractual relationship between a plan and its service provider and does not remotely touch upon the relationship between the plan and its beneficiaries. Therefore ERISA preemption is not implicated.
 
 Conclusion
 
 14
 For the reasons set forth above, the district court's judgment permitting Thrift to pierce UPA's corporate veil and to recover damages from Konigsberg is vacated and remanded with instructions to proceed in accordance with this opinion. The district court's judgment determining UPA's liability in the amount of $59,472.34 with interest is affirmed.
 
 
 
 *
 Thrift also sued Prescription Plan Service Corporation ("PPSC"), another prescription benefit plan provider owned and allegedly dominated by Konigsberg, for debts incurred by UPA under the laws of agency. By stipulation of all the parties, Thrift has dismissed with prejudice its claim against PPSC