**THRIFT DRUG, Plaintiff,**

v.

**PRESCRIPTION PLAN SERVICE CORP., Universal Prescription Administrators, and Alvin S. Konigsberg, Defendants.**

**No. 93 Civ. 4460 (WK).**

United States District Court,
S.D. New York.

April 22, 1998.

R. Damien Schorr, Pittsburgh, PA, for Plaintiff.

Steven H. Kern, Roy Barnes P.C., Elmsford, NY, for Defendant.

### OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

This is a breach of contract case brought by plaintiff Thrift Drug ("plaintiff") for the

recovery of damages already entered by this court against defendant Universal Prescription Administrators ("UPA") in the amount of $59,472.34 (plus prejudgment interest). Plaintiff claims that UPA was so dominated by its owner and sole shareholder, defendant Alvin Konigsberg ("Konigsberg"), that Konigsberg should be held personally liable for this judgment against UPA. The question of whether or not plaintiff can pierce the corporate veil is now before us upon remand by the Court of Appeals in *Thrift Drug, Inc. v. Universal Prescription Administrators*, 131 F.3d 95 (2nd Cir.1997) For a statement of the relevant facts we refer to the Second Circuit's opinion.

When the matter was originally before us, we denied plaintiff's motion for summary judgment on the question of piercing the corporate veil, saying (*Thrift Drug v. Prescription Plan Service Corp.*, 890 F.Supp. 319, 321 (S.D.N.Y.1995)):

> [W]hile it may very well be that Konigsberg used the corporation as his alter ego, and in so doing precluded himself from relying on the corporation to limit his liability, that determination is up to a jury to make and cannot be resolved on summary judgment.

Following a bench trial, we found that Konigsberg's use of "the corporation as his alter ego" was "perfectly clear," concluding that "where the corporation in fact is run by one person regardless of any corporate form, that person has to be responsible for whatever debt the corporation" has. Tr. At 77.[1] However, believing it to be unnecessary, we made no finding as to whether or not Konigsberg had any fraudulent intent. The Second Circuit, interpreting a recent New York Court of Appeals decision, ruled that our failure to make such a finding had been error; and that in order to rule for the plaintiff on this issue we would have to make a finding that Konigsberg (131 F.3d at 97):

> [T]hrough [his] domination, abused the privilege of doing business in the corporate form to perpetuate a wrong or injustice *** such that a court in equity will intervene. (citations omitted in original)

Having carefully reviewed the evidence before us, there can be no question that it establishes beyond a reasonable doubt that Konigsberg "abused the privilege of doing business in the corporate form." Konigsberg obviously considered UPA's assets (and those of about six other "phantom" corporations he similarly owned and controlled) to be available for any non-corporate purpose, and he made such use of its assets anytime it seemed convenient. For example, the record established that Konigsberg authorized UPA to loan in excess of two million dollars to at least six of Konigsberg's other wholly owned corporations, and that these loans were never repaid. Tr. At 10–14. Konigsberg also considered UPA's assets to be available for personal use, readily withdrawing funds for his own use without any indication that he considered himself obligated to repay UPA. Konigsberg also allowed members of his family to live rent-free in a house owned by UPA. (Tr. at 21). Evidence of these transactions led us to conclude that "whatever money he needed he got from whatever corporation there was at the time." Tr. at 76. This consistently carefree conduct with respect to the assets of UPA (and those of his other "phantom" corporations) compels the conclusion that Konigsberg's sole reason for creating and maintaining these corporations was to enable him to conduct his personal business in such a manner that no assets used in the businesses could ever be reached by any creditor.

While it is highly doubtful that Konigsberg had any animus against this particular plaintiff, the plaintiff was clearly a part of the class of potential creditors against whom Konigsberg's use of UPA (and the other "phantom" corporations) was directed.

Based on this irrefutable evidence, we find Konigsberg's argument in opposition rather disingenuous. After discussing the difficulties that had fallen upon UPA including its inability to collect from its debtors, Konigsberg asserts that if UPA had been able to collect these debts, there would have been "more than enough money to pay Thrift's claim in full." *See* Defendant Konigsberg's Objections to Proposed Findings and Conclu-

---

1. "Tr." refers to the transcript of the bench trial held on October 15, 1996.

sions Filed by Plaintiff, and Counter–Proposed Findings and Conclusions at 6. In other words, what Konigsberg is telling us is that if UPA had never suffered any difficulties with its business, Konigsberg would have had no occasion to defraud anyone.

### CONCLUSION

In conclusion, we find as a fact that Konigsberg's domination of UPA was used to commit a fraud against plaintiff Thrift Drug, resulting in plaintiff's injury. Accordingly, plaintiff may pierce UPA's corporate veil and hold Konigsberg personally liable for UPA's debt to it; and the Clerk is directed to enter an appropriate judgment.

**SO ORDERED.**