Nathan ORENBUCH, on behalf of himself and all others similarly situated, Plaintiff,

v.

**NORTH SHORE HEALTH SYSTEMS, INC., Defendant.**

No. CV 01–5169(ADS)(WW).

United States District Court, E.D. New York.

March 13, 2003.

Katz & Kleinman, Uniondale, NY (Abraham Kleinman, Lawrence Katz, of counsel), for Plaintiff.

Jacobowitz, Garfinkel & Lesman, New York City (Kevin Barry McHugh, of Counsel), North Shore–Long Island Jewish Health Systems, Office of Legal Affairs, Great Neck, NY (Mark A. Gloade, of Counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations by Nathan Orenbuch ("Orenbuch" or the "plaintiff") that North Shore Health System, Inc. ("NSHS" or the "defendant") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Presently before the Court is the defendant's motion for summary judgment dismissing the complaint in its entirety.

## I. BACKGROUND

The following facts are not materially in dispute. NSHS, North Shore University Hospital (NSU Hospital), North Shore Long Island Jewish System ("NSLIJS"), and Long Island Jewish Medical Center ("LIJ") are all corporations organized under the Not–For–Profit Law of New York State. NSLIJS is the sole corporate member of NSHS, which in turn is the sole corporate member of NSU Hospital and certain other hospitals in Queens, Nassau, Suffolk and Staten Island. NSLIJS is also the sole corporate member of LIJ. NSHS provides administrative support services to the hospitals of which it is a member.

Regional Claims Recovery Service ("RCRS") is an unincorporated subdivision of the defendant. Since 1992, "RCRS" has been the registered trade name with the New York Department of State and has been licensed with the New York City Department of Consumer Affairs since 1994. RCRS performs customary debt collection services for most of the hospitals of which NSHS is a member, in addition for other medical care providers unrelated to NSHS. Since RCRS was formed in 1992, one of its primary goals has been to

expand its debt collection business to clients unrelated to NSHS and its affiliated hospitals. Indeed, RCRS has a full-time sales representative who devotes nearly all of her time to the procurement of new business from sources unaffiliated with NSHS and has a sales brochure which is given to prospective clients.

RCRS has 85 full-time employees and 15 part-time employees, none of whom are employed by hospitals or by any RCRS clients. RCRS has its own office in a different location from NSHS or any affiliated hospital. RCRS has its own fully automated computer system, which it uses to monitor the delinquent accounts of all of its clients. RCRS orders and is billed directly for its supplies from sources unrelated to NSHS. RCRS handles its own mailings, and the letters that it uses for NSHS affiliated hospitals do not differ from the letters for the non-affiliated hospitals.

RCRS follows the same procedure when it receives payments on behalf of all of its clients. RCRS receives a fee percentage of all sums collected (except for its Medicaid Eligibility Program). The fees it charges reflect the prevailing market rates generally charged by debt collection agencies. All of RCRS's clients receive the same service options. RCRS makes the same type of telephone calls on behalf of all of its clients and uses the standard written reports used in the debt collection industry. If RCRS's collection efforts are unsuccessful, RCRS makes recommendations to all of its clients regarding the initiation of legal action.

On March 5, 2001, Orenbuch received medical treatment at LIJ, and ten days later, received medical treatment from NSU Hospital. The plaintiff owed the sums of $200 and $40, respectively, for his treatment at the hospitals. After unsuccessfully attempting to obtain payment from the plaintiff, both hospitals referred the debts to RCRS, as stated above, an unincorporated subdivision of the defendant.

On June 21, 2001 and July 16, 2001, RCRS sent letters to the plaintiff in an effort to obtain the debts owed to LIJ and NSU Hospital. The letters bore the RCRS letterhead, address and telephone number and are the subject of this case. Both letters stated, among other things:

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within the 30 day period that the debt or any portion thereof is disputed, this office will obtain verification or judgment. If you request this office in writing within the 30 day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.... IF ACCOUNT IS PAID, THANK YOU AND DISREGARD THIS LETTER.**

On August 3, 2001, Orenbuch commenced this action alleging that NSHS violated several sections of the FDCPA. On July 12, 2002, NSHS filed a motion for summary judgment dismissing the complaint. On July 24, 2002, Orenbuch filed a memorandum entitled "Plaintiff's Memorandum Of Law In Support Of His Motion For Summary Judgment", which the Court construes as his opposition to the defendant's motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in

favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. Fair Debt Collection Practices Act

FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors" in addition to ensuring that "those debt collectors who refrain from abusive practices are not competitively disadvantaged." 15 U.S.C. 1692(e). Non-compliance with the regulations will subject the debt collector to liability. 15 U.S.C. 1692k. The regulations primarily apply to a class defined under the act as "debt collectors", which includes any creditor who uses a name other than his own to indicate that a third party is attempting to collect the debt. 15 U.S.C. 1692a(6). Both parties agree that the FDCPA applies to the defendant. However, the plaintiff contends that the defendant has committed several violations of the act, while the defendant avers full compliance.

### 1. Relationship of NSU Hospital and NSHS and its Subdivision RCRS

█ Orenbuch claims that the defendant violated 15 U.S.C. § 1692j, which pro-

hibits the creditor from falsely creating the impression that a third party is involved in the debt collection. *See Clomon v. Jackson*, 988 F.2d 1314, 1321 n. 1 (2d Cir.1993). Section 1692j provides, in pertinent part:

> (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. 1692j. The purpose of this section is to prevent the abusive practice known as "flat-rating". *Rumpler v. Phillips & Cohen Associates, Ltd.*, 219 F.Supp.2d 251, 260 (E.D.N.Y.2002); *Franceschi v. Mautner–Glick Corp.*, 22 F.Supp.2d 250, 256 (S.D.N.Y.1998). A flat-rater is one who sells to creditors "dunning letters" bearing the letterhead of the flat-rater's collection agency and extorting the debtor to pay the creditor at once. *Franceschi*, 22 F.Supp.2d at 256 (quoting *S.Rep. No. 95–382* (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). The flat-rater merely sells the dunning letters and is not in the debt collection business. After purchasing these letters, the creditor sends them to his debtor in order to give the false impression of the existence of a third party debt collector and to instill a sense of urgency in the debtor. *Id.*

Here, the complaint alleges that NSHS has designed, compiled, and furnished forms creating the false belief in debtors that a person other than the creditor, NSU Hospital, is participating in the collection of the debt, thereby violating Section 1692j. In his opposition to the defendant's motion for summary judgment, the plaintiff states that "the defendant rightly points out that the creditors (hospitals) and the defendant are separate legal entities, yet it is also clear that the defendant and the creditors are affiliated, in fact, one certainly might conclude from the structure of these companies that each entity controls the other one." Thus, although not entirely clear from the plaintiff's papers, it appears that he is requesting that the Court pierce the corporate veil of NSU Hospital and NSHS and its unincorporated subdivision RCRS to treat them as one entity for the purpose of finding NSHS in violation of Section 1692j.

 The corporate veil may be pierced either "to prevent fraud or other wrong, or where a parent dominates or controls a subsidiary." *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 778 (1995). In order to establish an abandonment of separateness, the plaintiff must demonstrate that: (1) the NSU Hospital exercised domination over NSHS and NSHS's unincorporated subdivision RCRS regarding the alleged violation; and (2) that such domination was used to commit the alleged violation. *Thrift Drug, Inc. v. Universal Prescription Administrators*, 131 F.3d 95, 97 (2d Cir.1997); *see also Harrison v. NBD Inc.*, 990 F.Supp. 179, 184 (E.D.N.Y.1998).

 To determine whether the necessary dominion and control exists for the Court to pierce the corporate veil, the Court must examine several factors, including (1) the sharing of a common office, staff, and ownership; (2) the intermingling of funds; (3) the treatment of the corporations as one, not separate, profit centers; (4) the lack of the conventions of corporate existence; and (5) any inadequate earnings. *Williams Passalacqua Builders Inc. v. Resnick Developers South Inc.*, 933 F.2d 131, 139 (2d Cir.1991); *Farber v. NP Funding II L.P.*, No. 96 CV 4322, 1997 WL 913335, *2 (E.D.N.Y. Dec.9, 1997) (citing *Passalacqua Builders*, 933 F.2d at

139). In applying these factors, "there is a presumption of separateness ... which is entitled to substantial weight." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.1988), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) (citation omitted).

Interestingly, a court addressed the same issue in *Colman v. North Shore Health Systems*, No. 98 CV 1871, 1998 U.S. Dist. LEXIS 23428 (S.D.N.Y. Jun. 19, 1998), which also involved NSU Hospital, NSHS, and RCRS. In *Colman*, the plaintiff argued that NSU Hospital and NSHS were one and the same on the grounds that, "(1) the [NSU] Hospital letterhead refers to NSHS; (2) the entities have the same trustees and officers; and (3) NSHS provides centralized services—including centralized billing—to its affiliated hospitals, including [NSU] Hospital.... 'NSHS provides health care services through its family of hospitals, including [NSU Hospital].'" *Id.*, at *8–9. In rejecting Colman's argument, the court determined that there was insufficient evidence showing the required domination of NSU Hospital over NSHS and its unincorporated division RCRS in order to pierce the corporate veil because the plaintiff offered only conclusory statements with regard to such alleged domination. *Colman*, 1998 U.S. Dist. LEXIS 23428 at *14.

■ In this case, Orenbuch makes similar conclusions without introducing a single piece of evidence to support them. As the court in *Colman* determined, the mere fact that the NSU Hospital utilizes the services of NSHS is insufficient to support a "virtual abandonment of separateness" or the kind of economic control required to consider the entities as one or to pierce the corporate veil. 1998 U.S. Dist. LEXIS at *13. Indeed, although the defendant relies on *Colman* because it is directly on point to the issues in this case, in his papers the plaintiff neither acknowledges the case nor addresses the issue of piercing the corporate veil with any analysis. Accordingly, even viewing all the evidence in the light most favorable to Orenbuch, the Court concludes that he has failed to set forth any evidence to raise an issue of fact indicating that NSU Hospital and NSHS and its subdivision RCRS should be treated as one entity or that the corporate veil should be pierced.

## 2. Misleading Statements

■ The plaintiff also alleges violations of 15 U.S.C. § 1692e *et seq.*, which proscribes using any false and misleading representations in communications from debt collectors to debtors. Notably, "any false, deceptive, or misleading representation in a collection letter violates section 1692e." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir.1993). The list of prohibited deceptive practices contained in the sixteen sub-sections of 1692e is non-exclusive. *Id.* at 1318. The plaintiff's claims under Section 1692e are based on RCRS's failure to disclose in the letters its connection to the defendant and the hospitals.

■ The plaintiff claims that NSHS violated Section 1692e(14), which prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. 1692e(14). The defendants correctly argue that there is nothing misleading about a debt collector (RCRS) using the name by which it is known to the public where, as here, that name is a registered trade name with the New York Department of State. It is undisputed that, (1) "RCRS" is the registered trade name with the New York Department of State since 1992; (2) RCRS has been licensed with the New York City Department of Consumer Affairs since 1994; and (3) RCRS is the name by which it transacts business and holds itself out to the public. Thus, because RCRS letters

refer to RCRS's "true name," it does not constitute a "false deceptive or misleading representation." 15 U.S.C. § 1692e; *see Moore v. National Account Systems, Inc.,* No. 91 CV 35, 1991 WL 313896, *1, 1991 U.S. Dist. LEXIS 18137, at *2 (D.Conn. Nov. 13, 1991) (holding that the name under which a debt collector is licensed to do business is the debt collector's "true name" for purposes of the FDCPA).

■ The plaintiff further claims violations of Section 1692e because RCRS's letters did not disclose its affiliation with NSHS or the two hospitals which treated the plaintiff. As the court in *Colman* determined, nothing in the text of the FDCPA requires disclosure of a debt collector's corporate affiliation. 1998 U.S. Dist. LEXIS 23428, at *16 (citing *Harrison v. NBD, Inc.,* 990 F.Supp. 179, 184 (E.D.N.Y.1998) (noting merely because a creditor utilizes a corporate affiliate to collect its debts does not constitute a violation under the FDCPA for sending a "false, misleading or deceptive" collection letter)). The plaintiff fails to cite to any case which would indicate otherwise.

■ Furthermore, the Federal Trade Commission's Official Staff Commentary on the FDCPA provides:

**A creditor does not violate [1692e(14)] where an affiliated (and differently named) debt collector undertakes collection activity, if the debt collector does business separately from the creditor (e.g., where the debt collector in fact has other clients that he treats similarly to the creditor, has his own employees, deals at arms length with the creditor, and controls the process himself).**

FTC Official Staff Commentary on the FDCPA, Comment 807(14), *53 Fed.Reg. 50107* (1988). This commentary demonstrates that an affiliated, but separate, entity may properly collect a creditor's debts.

*See Colman,* 1998 U.S. Dist. LEXIS 23428, at *16.

In this case, the plaintiff does not dispute that, (1) RCRS has its own office in a different location from NSHS or any affiliated hospital; (2) RCRS has its own employees, who are not employed by or in any way subject to the control of the hospitals; (3) RCRS has its own fully automated computer system, which it uses to monitor the delinquent accounts of all of its clients; (4) RCRS orders and is billed directly for its supplies from sources unrelated to NSHS; (5) RCRS handles its own mailings and uses the same letters for all of its clients; (6) RCRS follows the same procedure when it receives payments on behalf of its clients; (7) RCRS utilizes the same procedure in its effort to obtain payment on behalf of their clients; (8) the day-to-day control over RCRS's debt collection activities is vested exclusively in RCRS; and (9) RCRS performs customary debt collection services for hospitals of which NSHS is not a member. These factors demonstrate that the hospitals and RCRS do business separately. Based on the uncontraverted evidence, the Court concludes that RCRS's nondisclosure of its connection with the hospitals does not constitute a "false, deceptive, or misleading representation" under Section 1692.

### 3. Overshadowing under 15 U.S.C. 1692g

When a debt collector sends notices to a debtor, the FDCPA requires the use of specific statutory language to make the debtor aware of certain rights under the law. 15 U.S.C. 1692g *et seq.* Under this notice requirement of the FDCPA, the required language includes such things as the creditor's name; the amount due; and a statement that the debtor has thirty days to dispute the debt. *See* 15 U.S.C. 1692g(a)(1),(2),(3).

In this Circuit, communications are examined using an objective standard through the eyes of the "least sophisticated consumer." *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998); *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) ("The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."). FDCPA violations occur if the communication fails to convey the statutorily required information "clearly and effectively ... [making] the least sophisticated consumer uncertain as to her rights." *Savino,* 164 F.3d at 85; *see De-Santis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001).

In applying these standards, courts must balance the competing interests of protecting naive and credulous consumers with the objective element of reasonableness necessary to protect debt collectors. *Clomon,* 988 F.2d at 1319. The concept of reasonableness serves to protect the debt collector from liability stemming from "unrealistic or peculiar interpretations of collection letters." *Jang v. A.M. Miller & Assoc.,* 122 F.3d 480, 484 (7th Cir.1997); *see also Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993) (citing *Rosa v. Gaynor,* 784 F.Supp. 1, 3 (D.Conn.1989)) (stating FDCPA "does not extend to every bizarre or idiosyncratic interpretation" of a collection notice).

In this case, the parties agree that the letters contained the required statutory language. Nevertheless, the plaintiff focuses on the final sentence in the letter which is as follows: "IF ACCOUNT IS PAID, THANK YOU AND DISREGARD THIS LETTER." Orenbuch formerly claimed that this sentence overshadowed and contradicted the meaning of the validation notice required by the statute to such an extent that it would make the "least sophisticated consumer" uncertain as to his rights, thereby violating Section 1692g.

At a hearing on March 13, 2003 for oral argument on this motion, the plaintiff withdrew this claim. As such, the Court need not discuss this issue.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion for summary judgment dismissing the complaint is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**